IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
LUBBOCK DIVISION

| | | |
|---|---|---|
| **FORD MOTOR CREDIT COMPANY LLC,** | § | |
| **Plaintiff,** | § | |
| | § | |
| | § | |
| **v.** | § | **Civil Action No.: 5:18-cv-00186** |
| | § | |
| **BART REAGOR AND RICK DYKES,** | § | |
| **Defendants.** | § | |

## DEFENDANTS' BRIEF IN SUPPORT OF RULE 56(d) MOTION TO DEFER CONSIDERATION OF PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND TO TAKE DISCOVERY

Marshall M. Searcy, Jr.
State Bar No. 17955500
marshall.searcy@kellyhart.com
Scott R. Wiehle
State Bar No. 24043991
scott.wiehle@kellyhart.com
KELLY HART & HALLMAN, LLP
201 Main Street, Suite 2500
Fort Worth, Texas  76102
Telephone:  (817) 332-2500
Telecopy:  (817) 878-9280
**ATTORNEYS FOR BART REAGOR**

Tom Kirkendall
State Bar No. 11517300
Law Office of Tom Kirkendall
2 Violetta Court
The Woodlands, Texas 77381-4550
Telephone: (281) 364-9946
Telecopy:  (888) 582-0646
bigtkirk@kir.com
**ATTORNEY FOR RICK DYKES**

# TABLE OF CONTENTS

**Page**

I.  BACKGROUND..................................................................................................... 2

II.  ARGUMENTS AND AUTHORITY......................................................................... 8

    A.  Rule 56(d) Standard    8

    B.  Ford Credit's Motion is Premature................................................... 10

    C   Reagor and Dykes are Entitled to Discovery On Affirmative Defenses........... 11

        1.  Whether Ford Credit Failed to Use Ordinary Care and Aided and Abetted a Breach of Fiduciary Duty and/or Fraud.................................. 12

    D.  Reagor and Dykes Are Entitled to Discovery On Damages ........................... 16

    E.  No Lack of Diligence On Reagor And Dykes' Part ......................................... 17

    F.  Conclusion ....................................................................................................... 18

## TABLE OF AUTHORITIES

**FEDERAL CASES**                                                                 **PAGE(S)**

*AgGrow Oils, L.L.C. v. Nat'l Union Fire Ins. Co. of Pittsburgh, PA*,
   242 F.3d 777 (8th Cir. 2001) ................................................................... 12

*American Family Life Assur. Co. of Columbus v. Biles*,
   714 F.3d 887 (5th Cir. 2013) ............................................................... 9, 10

*Bank of China v. Chan*,
   937 F.2d 780 (2nd Cir. 1991)................................................................... 15

*Enplanar, Inc. v. Marsh*,
   11 F.3d 1284 ........................................................................................... 10

*First Gibraltar Bank v. Bradley*,
   98 F.3d 1338 (5th Cir. 1996) ................................................................... 11

*In re Allied Supermarkets, Inc.*,
   951 F.2d 718 (6th Cir. 1991) ............................................................. 11, 15

*Stearns Airport Equip. Co. v. FMC Corp.*,
   170 F.3d 518 (5th Cir. 1999) ..................................................................... 9

*United States v. Vahlco Corp.*,
   800 F.2d 462 (5th Cir. 1986) ................................................................... 11

*Washington v. Allstate Ins. Co.*,
   901 F.2d 1281 (5th Cir. 1990) ................................................................... 9

**STATE CASES**

*Cox Tex. Newspapers, L.P. v. Wooten*,
   59 S.W.3d 717 (Tex. App.-Austin 2001, pet. denied) ................................ 12

*Kinzbach Tool Co. v. Corbett-Wallace Corp.*,
   160 S.W. 509 (Tex. 1942)........................................................................ 12

*Kline v. O'Quinn*,
   874 S.W.2d 776 (Tex. App.- Houston [14th Dist.] 1994, writ denied) ....... 12

*Mayfield v. Hicks*,
   575 S.W.2d 571 (Tex.Civ.App.—Dallas 1978, writ ref'd n.r.e.) ............... 11

*Montgomery Ward & Co. v. Scharrenbeck*,
   204 S.W.2d 508 (Tex. 1947)...................................................................................... 12

*Moore v. Liddell, Sapp, Zivley, Hill & Laboon*,
   850 S.W.2d 291 (Tex. App. 1993), writ denied (July 30, 1993) ................................. 11

*Reece v. First State Bank*,
   566 S.W.2d 296 (Tex. 1978)...................................................................................... 11

*Stephens v. First Bank & Trust of Richardson*,
   540 S.W.2d 572 (Tex.App.-Waco 1976, writ ref'd n.r.e.) ........................................... 11

**FEDERAL RULES**

FED. R. CIV. P. 56(d) .................................................................................................. 1, 9

FED. R. CIV. P. 56(f)................................................................................................... 9, 10

**IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
LUBBOCK DIVISION**

| | | |
|---|---|---|
| **FORD MOTOR CREDIT COMPANY LLC,** | § | |
| **Plaintiff,** | § | |
| | § | |
| | § | |
| **v.** | § | **Civil Action No.: 5:18-cv-00186** |
| | § | |
| **BART REAGOR AND RICK DYKES,** | § | |
| **Defendants.** | § | |

## DEFENDANTS' BRIEF IN SUPPORT OF RULE 56(d) MOTION TO DEFER CONSIDERATION OF PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND TO TAKE DISCOVERY

Defendants Bart Reagor ("Reagor") and Rick Dykes ("Dykes") file this Brief in Support of their Motion to Defer Consideration of Ford Motor Credit Company, LLC's ("Ford Credit") Motion for Summary Judgment and to Take Discovery.  Reagor and Dykes have attached hereto the declarations of Scott Wiehle (counsel for Reagor) (App. 3-4) and Robert Schleizer (Chief Restructuring Officer for the Reagor-Dykes dealerships) (App. 1-2) in support of their Motion.

Pursuant to Rule 56(d) of the Federal Rules of Civil Procedure, Reagor and Dykes respectfully request the Court to defer consideration of Ford Credit's summary judgment motion because it is premature and to permit Reagor and Dykes to conduct necessary discovery prior to responding to the motion.  Specifically, Reagor and Dykes request time to obtain and review documents from the Reagor-Dykes dealerships and Ford Credit, and time to take the depositions of Ford Credit employees (including, a corporate

representative deposition, Gary Byrd, Rene Leal, Paul Boudreau, and James Conlan),[1] the depositions of the AiM employees that conducted the June 2018 audit on behalf of Ford Credit, and the deposition of Shane Smith, the former chief financial officer of the Reagor-Dykes dealerships.[2]

# I.
# BACKGROUND

1.      Ford Credit's Amended Complaint and Motion for Summary Judgment characterizes this civil action as simply a lawsuit to enforce guaranty agreements after defaults by the primary obligors.  The case is not that simple.  Almost overnight, Ford Credit's actions resulted in the bankruptcy of multiple auto dealerships and the loss of hundreds of jobs in several West Texas communities.  Legitimate and reasonable questions exist as to why Ford Credit changed its course of conduct with regard to the Reagor-Dykes dealerships and impaired the value of collateral for its claims asserted in this civil action.

2.      Reagor and Dykes own the Reagor-Dykes Auto Group, a Lubbock-based group of automobile dealerships and related businesses.  Over the past 13 years, the Reagor-Dykes Auto Group steadily grew into one of the largest auto dealership

---

[1]      These Ford Credit employees gave limited deposition testimony in August 2018 prior to a hearing in the bankruptcy court.  Ford Credit's attorneys instructed the witnesses on numerous occasions to not answer questions based on relevance to the bankruptcy hearing.  The depositions were conducted by the Reagor-Dykes Auto Group's bankruptcy counsel at the time. Counsel for Reagor and Dykes were not entitled to ask any questions because Reagor and Dykes are not parties to the bankruptcy case.  Excerpts from the limited depositions are attached hereto as exhibits.

[2]      Reagor and Dykes also request the opportunity for any reasonable follow-up discovery necessary to defend Ford Credit's motion.

operations in West Texas, generating over $780 million in revenue in 2017.  As of July 28, 2018—the Reagor-Dykes Auto Group employed over 700 persons in Lubbock and other West Texas communities.

3.      From 2011 through 2015, the Reagor-Dykes Auto Group entered into a series of agreements under which Ford Credit provided comprehensive automobile financing for six dealerships.  Ford Credit's financing is secured by a blanket lien on most of the assets of those six dealerships, as well as a lien on certain other Reagor-Dykes Auto Group assets.

4.      For the past 11 years, Shane Smith ("Smith") was the chief financial officer of Reagor-Dykes Auto Group.  In that role, Smith coordinated and managed all financing arrangements for the Reagor-Dykes Auto Group, including the Ford Credit financing. Reagor and Dykes relied on and trusted Smith to manage all material financial transactions of the Reagor-Dykes Auto Group and to provide accurate information regarding those transactions.

5.      Prior to becoming the Reagor-Dykes CFO, Smith was an employee of Ford Credit, the plaintiff in this case.  App. 80 (p. 23, ll. 2-6).  Over the past 11 years, Smith maintained a close professional and personal relationship with Gary Byrd, Jr. ("Byrd"), the Dallas Regional Manager of Ford Credit and the person primarily responsible for overseeing Ford Credit's financing of the Reagor-Dykes Auto Group.[3]  App. 11 (p 25).

---

[3]      Byrd was deposed on August 15, 2018, one day prior to a hearing in the bankruptcy case. The deposition was limited to topics related to the bankruptcy hearing.  As an example of the strict limitations, Ford Credit's counsel instructed Byrd to not answer the question: "Did Shane [Smith] used to work for Ford Motor Credit?" App. 12 (p. 29, ll. 18-21), or the question: "Did you and Mr. Smith used to work together at Ford Motor Credit?" App. 20 (p. 64, ll. 22-25).

Byrd knew that Smith was responsible to managing the financial transactions between Reagor-Dykes Auto Group and Ford Credit and for reporting Reagor-Dykes Auto Group's financial information to Ford Credit.

6.     Ford Credit had the Reagor-Dykes dealerships on a quarterly audit schedule, but the decision on when an audit would actually occur involved approximately 15 Ford Credit employees.[4]   App. 13 (pp. 33-34).   The audits were supposed to be random to reduce the risk that the Reagor-Dykes dealerships would manipulate the audited records.[5]   Reagor and Dykes have since learned that Smith knew about the audits in advance.

7.     In late June 2018, Ford Credit completed its most recent periodic on-site review of Reagor-Dykes Auto Group's financial records pertaining to Ford Credit's financing.   As with all of Ford Credit's periodic reviews since 2011, Smith managed the June 2018 review on behalf of Reagor-Dykes Auto Group.

8.     In an email dated June 29, 2018, Ford Credit complimented Smith and Reagor-Dykes Auto Group for its June 2018 review, stating "[t]hese results really are fantastic and your entire organization should be commended for their hard work and their efforts!!" and confirming that Reagor-Dykes Auto Group's outstanding short-term indebtedness to Ford Credit was approximately $25 million (for out of trust sales).   App.

---

[4]     Byrd refused to answer whether the quarterly audit schedule on dealerships is standard or unusual for Ford Credit, claiming it is proprietary information.   App. 13 (p. 35, ll. 22 – p. 36, ll.1-6).

[5]     Ford Credit is claiming that the Reagor-Dykes dealerships sold approximately 1,100 vehicles out of trust, totaling approximately $40 million.   Inasmuch as Ford Credit was conducting quarterly audits, it seems highly unlikely that the dealerships could cover up out of trust sales to this extent from the audits.

33; App. 15  (pp. 42-43).  Ford Credit routinely provided the Reagor-Dykes dealerships a one week window to "true up" the current out of trust sales at the end of each audit.

9.      Approximately one month later, in late July 2018, Ford Credit notified Smith that it was undertaking an emergency, surprise on-site review of the Reagor-Dykes Auto Group's financial records.  App. 11 (pp. 27-28); App. 41 (p. 23).

10.      Unbeknownst to Reagor and Dykes, Ford Credit had decided to undertake the emergency review of financial records because of irregularities that Ford Credit had discovered in the financial information provided by Smith.  App. 11-12 (pp. 27-29). According to Byrd, Ford Credit employee James Conlan utilized a "Black Belt" computer program where you "identify defects per million opportunities" to the June audit, yet Byrd did not know how that decision came about.  App. 11 (pp. 26-27).[6]  Despite knowing that Smith had provided the financial information that Ford Credit was now questioning, Ford Credit did not notify Reagor or Dykes of the reason for the emergency review.

11.      On or about July 26, 2018, Ford Credit's emergency on-site review confirmed irregularities in the financial records of the Reagor-Dykes dealerships.  App. 8-9, 11-12 (pp. 15-19, 27-29).  On the same day, Smith notified Reagor and Dykes—both of whom were out of town at the time—that problems had emerged in regard to Ford Credit's emergency review.   On July 27 and 28, 2018, Messrs. Dykes and Reagor returned to Lubbock to assist in addressing Ford Credit's concerns.

---

[6]      Conlan explained in his limited deposition that a Six Sigma Black Belt project is a process of using data to drive all decisions.  App. 58 (p. 10).  Conlan is also the individual who discovered the financial irregularities related to the June audit.  App. 58-62 (pp. 12-28).

12.     On July 27, 2018, Ford Credit declared defaults under its agreements with the Reagor-Dykes dealerships, Reagor and Dykes, terminated providing any further financing to the Reagor-Dykes Auto Group, and—on July 31—filed this civil action against Reagor-Dykes Amarillo, L.P., Reagor-Dykes Auto Company, L.P., Reagor-Dykes II, L.L.C., Reagor-Dykes Floydada, L.P., Reagor-Dykes Imports, L.P., Reagor Auto Mall I, L.L.C., Reagor-Dykes Motors, L.P., Reagor-Dykes Plainview, L.P., Reagor-Dykes III, L.L.C., and Reagor and Dykes. [ECF No. 1].

13.     The following day, on August 1, 2018, the six Reagor-Dykes dealerships to which Ford Credit provided financing commenced Chapter 11 cases in the United States Bankruptcy Court for the Northern District of Texas, Lubbock Division: Case No. 18-50214 (Reagor-Dykes Motors, L.P.), Case No. 18-50215 (Reagor-Dykes Imports, L.P.), Case No. 50216 (Reagor-Dykes Amarillo, L.P.), Case No. 18-50217 (Reagor-Dykes Auto Company, L.P.), Case No. 18-50218 (Reagor-Dykes Plainview, L.P.) and Case No. 18-50219 (Reagor-Dykes Floydada, L.P.).  [ECF No. 6].

14.     At the same time as the Reagor-Dykes dealerships Chapter 11 cases were being commenced, Smith made a stunning disclosure.  Smith admitted that he had provided false financial information regarding the Reagor-Dykes dealerships to Ford Credit, Reagor and Dykes.  Upon learning of Smith's disclosure, Reagor-Dykes Auto Group terminated Smith's employment and referred Smith's disclosure to the local United States Attorney's Office, which has commenced an investigation.

15.     On August 8, 2018, Reagor and Dykes directed the Reagor-Dykes debtors in their Chapter 11 cases to request that the Bankruptcy Court appoint an independent

chief restructuring officer ("CRO") to manage the Reagor-Dykes dealership Chapter 11 cases.  On August 16, 2018, the Bankruptcy Court approved BlackBriar Advisors LLC of Dallas as the independent CRO.  The CRO is currently managing the Reagor-Dykes dealership Chapter 11 cases.  Part of that process is reviewing the financial records of Reagor-Dykes dealerships to determine the amount owed to Ford Credit and other creditors of the dealerships.  Another part of that process is reviewing and proposing a sale or recapitalization of the dealership assets, the proceeds of which would be used to fund a reorganization plan to pay claims or creditors, including Ford Credit.  Finally, the CRO is also responsible for any claims for damages that the Reagor-Dykes dealership bankruptcy estates may have against third parties.

16.    With respect to this civil action, on or about August 8, 2018, the Court severed six of the Reagor-Dykes dealerships from this suit.  [ECF No. 10].

17.    On or about September 14, 2018, this Court entered a scheduling order setting this case for trial on February 3, 2020.  [ECF No. 24]  Also in that order, the Court ordered that the deadline to file summary judgment motions is September 16, 2019, and that discovery must be completed by January 13, 2020.

18.    On or about November 2, 2018, the remaining Reagor-Dykes entities in this lawsuit (Reagor Auto Mall I, L.L.C., Reagor-Dykes II, L.L.C., and Reagor-Dykes III, L.L.C.) voluntarily filed for bankruptcy protection under Chapter 11 of the United States Bankruptcy Code, making Ford Credit's claims subject to the Bankruptcy Code's automatic stay provision.

19.     On or about December 21, 2018, Ford Credit filed a motion to sever the remaining Reagor-Dykes entities from this lawsuit.  The Court granted the severance on or about December 27, 2018, and further ordered that "all remaining claims and counterclaims among Ford Credit, Bart Reagor and Rick Dykes shall proceed forward in Civil Action No. 5:18-CV-186-C." [ECF No. 27]

20.     On January 7, 2019, the Reagor-Dykes dealerships filed their Chapter 11 Plan of Reorganization for Reagor-Dykes Auto Group, which is pending before the Bankruptcy Court.  *See* Case 18-50214-rlj11, ECF No. 795.

21.     On the same day, Ford Credit filed its summary judgment motion against Reagor and Dykes (approximately nine months before the summary judgment motion deadline and more than a year before the close of discovery).

22.     On January 17, 2019, the Bankruptcy Court issued an order that lifted the automatic stay as to Ford Credit and its collateral.  Case 18-50214-rlj11, ECF No. 865, p. 7.

23.     Negotiations relating to the plan of reorganization between all parties in interest, including the Reagor-Dykes dealerships and Ford Motor Credit, are ongoing at this time.

## II.
## ARGUMENTS AND AUTHORITY

**A.     Rule 56(d) standard.**

Federal Rule of Civil Procedure 56(d) provides that the Court may defer a motion for summary judgment or allow time for a nonmovant to obtain affidavits or declarations

or to take discovery if the nonmovant "shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition." FED. R. CIV. P. 56(d).  This rule is "designed to safeguard against a premature or improvident grant of summary judgment."  *Washington v. Allstate Ins. Co.*, 901 F.2d 1281, 1285 (5th Cir. 1990).  To justify a continuance, the Rule 56(d) motion must demonstrate (1) why the movant needs additional discovery and (2) how the additional discovery will likely create a genuine issue of matter fact.  *See Stearns Airport Equip. Co. v. FMC Corp.*, 170 F.3d 518, 534-35 (5th Cir. 1999) (construing former FED. R. CIV. P. 56(f)).  In response to a proper motion for a continuance to obtain further discovery, the Court may (1) defer considering the [summary judgment] motion or deny it; (2) allow time to obtain affidavits or declarations or to take discovery; or (3) issue any other appropriate order."  FED. R. CIV. P. 56(d)

Rule 56(d) motions are "broadly favored and should be liberally granted because the rule is designed to safeguard non-moving parties from summary judgment motions that they cannot adequately oppose."  *American Family Life Assur. Co. of Columbus v. Biles*, 714 F.3d 887, 894 (5th Cir. 2013).   The Court generally should grant "a continuance for additional discovery if [the nonmovant]: (i) requested extended discovery prior to [the Court's] ruling on summary judgment; (ii) placed [the Court] on notice that further discovery pertaining to the summary judgment motion was being sought; and (iii) demonstrated to [the Court] with reasonable specificity how the requested discovery pertained to the pending motion."  *Enplanar, Inc. v. Marsh*, 11 F.3d 1284, 1291 (5th Cir. 1994 (citations omitted) (construing former FED. R. CIV. P. 56(f)). Where specified

9

facts, susceptible of collection within a reasonable time frame, probably exist and may influence the outcome of the pending summary judgment motion, Courts should allow the parties to complete that discovery. *Biles*, 714 F.3d at 894.

**B.      Ford Credit's Motion is premature.**

The Court should defer consideration of Ford Credit's Motion because it is premature.  The Court set September 16, 2019 as the summary judgment deadline, January 13, 2020 as the discovery deadline, and February 3, 2020 as the trial date.  These settings indicate that the Court understands that this is a complicated civil case that requires discovery and will be impacted by the ongoing bankruptcy proceedings.  For example, on January 7, 2019 (the same day Ford Credit filed its motion), the Reagor-Dykes dealerships filed its Chapter 11 Plan of Reorganization for Reagor-Dykes Auto Group (the "Plan"), which is currently pending before the Bankruptcy Court.  *See* Case 18-50214-rlj 11, ECF No. 795.  On January 17, 2019, the Bankruptcy Court issued an order that lifted the automatic stay as to Ford Credit and its collateral.  Case 18-50214-rlj11, ECF No. 865, p. 7.  Ford Credit's claims in this lawsuit will surely be impacted should the Plan be confirmed or should Ford Credit foreclose on its collateral (or however the bankruptcy is resolved).

Moreover, Reagor and Dykes should be given a fair opportunity to defend themselves and learn and understand why their business essentially crumbled overnight (and whether Ford Credit was complicit in its downfall).  Because of the ongoing bankruptcy and protection provided by the Bankruptcy Court, Ford Credit will not be

prejudiced by the Court deferring the summary judgment motion and permitting Reagor and Dykes to take discovery.

## C.     Reagor and Dykes are entitled to discovery on affirmative defenses

The Reagor-Dykes dealerships' bankruptcy is quite complicated and much remains disputed and unknown.   Reagor and Dykes, however, are entitled to present affirmative defenses[7] and any defenses the Reagor-Dykes dealerships might have against Ford Credit.   *Mayfield v. Hicks*, 575 S.W.2d 571, 574 (Tex.Civ.App.—Dallas 1978, writ ref'd n.r.e.) (stating the general rule is that "guarantors have the right to raise any defenses to the guaranteed obligation that the principal may have"); *see also First Gibraltar Bank v. Bradley,* 98 F.3d 1338 (5th Cir. 1996); *Moore v. Liddell, Sapp, Zivley, Hill & Laboon,* 850 S.W.2d 291, 294 (Tex. App. 1993), writ denied (July 30, 1993); *Stephens v. First Bank & Trust of Richardson,* 540 S.W.2d 572 (Tex.App.-Waco 1976, writ ref'd n.r.e.).[8]

In this suit, Reagor and Dykes have asserted an affirmative defense on which they need discovery—that Fort Credit's claims are barred in whole or in part because Ford

---

[7]     A guaranty agreement is construed strictly in favor of the guarantor under Texas law. *United States v. Vahlco Corp.*, 800 F.2d 462, 465 (5th Cir. 1986). It may not be extended beyond its precise terms by construction or implication. *Reece v. First State Bank*, 566 S.W.2d 296, 297 (Tex. 1978).  Here, nothing in the guaranty agreements provides or suggests that he has waived affirmative defenses on his behalf or on behalf of the Reagor-Dykes dealerships. *See* ECF No. 30-6, p. 3.

[8]     *See also In re Allied Supermarkets, Inc.*, 951 F.2d 718, 728 (6th Cir. 1991) (a guarantor may assert both the defenses available to the primary obligor regarding the principal obligation on the debt and any personal defenses that arise out of the guaranty obligation, including fraud); *AgGrow Oils, L.L.C. v. Nat'l Union Fire Ins. Co. of Pittsburgh, PA*, 242 F.3d 777 (8th Cir. 2001) (in defending a claim on a bond, the surety may raise nearly all defenses available to the principal obligor, plus defenses unique to the surety, such as actions by the obligee that impair the surety's position or release the principal obligor).

Credit failed to exercise ordinary care and may have aided and abetted a breach of fiduciary duty and/or fraud. [ECF No. 23, pp. 65-66].

**1.     Whether Ford Credit failed to use ordinary care and aided and abetted a breach of fiduciary duty and/or fraud**

It has long been the law in Texas that "[a]ccompanying every contract is a common-law duty to perform with care, skill, reasonable expedience and faithfulness the thing agreed to be done." *Montgomery Ward & Co. v. Scharrenbeck*, 204 S.W.2d 508, 510 (Tex. 1947).  It has also long been the law in Texas that aiding and abetting a breach of fiduciary duty gives rise to liability.  *See, e.g., Kinzbach Tool Co. v. Corbett-Wallace Corp.*, 160 S.W. 509, 514 (Tex. 1942); *Cox Tex. Newspapers, L.P. v. Wootten*, 59 S.W.3d 717, 721 (Tex. App.-Austin 2001, pet. denied); *Kline v. O'Quinn*, 874 S.W.2d 776, 786 (Tex. App.- Houston [14th Dist.] 1994, writ denied).  Reagor and Dykes contend that Ford Credit may have violated these duties, causing the Reagor-Dykes dealerships to fail.

Reagor and Dykes contend that Ford Credit may have caused the Reagor-Dykes Dealerships to incur the debt at issue through conscious indifference to the accounting misdeeds that Ford Credit knew, or certainly should have known, were occurring through Shane Smith, the Reagor-Dykes Dealerships CFO (who is also a former employee of Ford Credit).  Smith, unquestionably, owed a fiduciary duty to the Reagor-Dykes dealerships (and its owners), and Smith, in taking the fraudulent steps in which he engaged, breached those duties.

Smith's primary contact with Ford Credit was Gary Byrd, and their relationship extends back to when Smith was employed by Ford Credit.  *See* App. 8 (p. 13, ll. 9-11).

Reagor and Dykes contend that Byrd (and perhaps other Ford Credit employees), as the lender, may have aided and abetted Smith and knowingly participated in Smith's breach and fraud.  Thus, the alleged concerted action of Smith and Byrd harmed the Reagor-Dykes dealerships, and thus Reagor and Dykes.

As shown above, Ford Credit had the Reagor-Dykes dealerships on a quarterly audit schedule, but the decision on when an audit would actually occur involved approximately 15 Ford Credit employees.   App. 13 (pp. 33-34).   The audits were supposed to be random to reduce the risk that the Reagor-Dykes dealerships would manipulate the audited records.   Reagor and Dykes, however, have since learned that Smith knew about the audits in advance.   Reagor and Dykes are entitled to discovery how Smith learned about the random audits and who was responsible for Ford Credit's breach of security.

Ford Credit is also claiming that the Reagor-Dykes dealerships sold approximately 1,100 vehicles out of trust, totaling approximately $40 million.  Inasmuch as Ford Credit was auditing the dealerships on a quarterly basis, it is highly unlikely that the dealerships, acting alone, would be able to cover up out of trust sales to that extent.  Thus, Reagor and Dykes are entitled to discovery to determine whether Ford Credit indulged such out of trust sales in previous audits without notifying Reagor and Dykes.

Reagor and Dykes are also entitled to discovery regarding Ford Credit's audit process.  In late June 2018, Ford Credit completed its most recent periodic on-site review

of Reagor-Dykes Auto Group's financial records pertaining to Ford Credit's financing.[9] As with all of Ford Credit's periodic reviews since 2011, Smith managed the June 2018 review on behalf of Reagor-Dykes Auto Group.  In an e-mail dated June 29, 2018, Ford Credit praised Smith and Reagor-Dykes Auto Group for the June 2018 review, stating "[t]hese results are fantastic and your entire organization should be commended for their hard work and their efforts!! and confirming that Reagor-Dykes Auto Group's outstanding short-term indebtedness to Ford Credit was approximately $25 million.[10] App. 33.  Yet, in late July 2018, just one month later,  Ford Credit notified Smith that it was undertaking an emergency on-site review of the Reagor-Dykes Auto Group's financial records.

On July 26, 2018, Ford Credit's emergency on-site review confirmed irregularities in the financial records of the Reagor-Dykes dealerships.  On the same day, Smith notified Reagor and Dykes—both of whom were out of town at the time—that problems had emerged in regard to Ford Credit's emergency review.  On July 27 and 28, 2018, Messrs. Dykes and Reagor returned to Lubbock to assist in addressing Ford Credit's concerns.  On July 27, 2018, Ford Credit declared defaults under its agreements with the Reagor-Dykes dealerships, Reagor and Dykes, terminated providing any further financing to the Reagor-Dykes Auto Group, and—on July 31—filed this civil action.

---

[9]     Ford Credit used a third-party vendor, AiM, to conduct the audits of the Reagor-Dykes dealerships.  App. 15.

[10]     Ford Credit routinely provided the Reagor-Dykes dealerships with an one week window to "true up" current out of trust sales at the end of each audit.

Needless to say, something is amiss and Reagor and Dykes are entitled to take discovery on what happened here.

Moreover, based on the above-referenced facts, it is certainly plausible that Ford Credit (through Byrd) participated in the deepening insolvency of the Reagor-Dykes dealerships by lending more money when there was no hopes of the borrowing entities being able to repay.  Ford Credit then protected itself by taking all of the assets of the dealerships as collateral, while Reagor and Dykes relied on the Ford Credit's actions of lending more money as signifying the financial health of the Reagor-Dykes dealerships. Ford Credit thus profited by its continued dealing, but the dealerships failed, potentially leaving the loss on the guarantors.  These contentions support Reagor's defense that Ford Credit failed to use ordinary care in its dealings with the Reagor-Dykes dealerships.  *See Bank of China v. Chan*, 937 F.2d 780, 789 (2nd Cir. 1991) (reversing grant of summary judgment on issue) ("The bank's bad faith in handling the letters of credit and in causing [the primary obligor's] demise, if proved, would be a complete defense to the guaranty"); *In re Allied Supermarkets, Inc.*, 951 F.2d 718, 728 (6th Cir. 1991) (misconduct by a creditor which has a material adverse effect on the rights or obligations of a guarantor voids the contract of guaranty between the parties).

At this point, Reagor has no knowledge of Smith and Byrd's dealings prior to the July 2018 emergency audit.  Ford Credit's counsel instructed Byrd to not answer any questions about Smith other than their communications during the emergency audit. Based on the inconsistencies between the June and July audits, and Smith and Byrd's longstanding relationship, Reagor and Dykes are certainly entitled to take discovery to

determine whether Byrd was complicit in Smith's scheme.   To that end, Reagor and Dykes need discovery, including at least the following:

- The deposition of Gary Byrd

- The deposition of James Conlan, who discovered the financial irregularities and discussed them with Byrd

- All emails between Gary Byrd and his co-employees relating to the Reagor-Dykes dealerships (date)

- All emails between Gary Byrd and Shane Smith from both professional and personal email accounts (date)

- The deposition of Shane Smith

- All documents related to Ford Credit's audits of the Reagor-Dykes dealerships

- The depositions of the AIM employees who conducted the June 2018 audit

- Access to the Reagor-Dykes dealerships' documents

**D.   Reagor and Dykes are entitled to discovery on damages**

Reagor and Dykes are also entitled to discovery on Ford Credit's damages claims, which forced the Reagor-Dykes dealerships into bankruptcy.   Ford Credit's claimed damages, which are contested, are a major subject of the bankruptcy. In its Motion, Ford Credit attaches the Declaration of Rene Leal, who is the Financial Services Manager for the Central Market Area for Ford Credit.   [ECF No. 30-1].   In Paragraph 41 of the Declaration, Leal sets forth the alleged indebtedness of the Reagor-Dykes dealerships ($112,041,555.36 as of August 1, 2018) without providing any underlying data or calculations.   [ECF No. 30-1, p. 10, ¶ 47].   Leal has previously testified that he does not know the value of Ford Credit's collateral, which will have a significant impact on its damages.   App. 82 (p. 32).   At a minimum, Reagor and Dykes are entitled to the

underlying data and calculations relied upon by Leal, and to depose Leal regarding the underlying data and calculations.

### E.      No lack of diligence on Reagor and Dykes' part

Reagor and Dykes have been involved with the bankruptcy proceedings, wherein they are the individual owners of the Reagor-Dykes dealerships.  The financial situation of the Reagor-Dykes dealerships is most complicated, and Reagor and Dykes have been working with the Reagor-Dykes dealerships and through counsel in unraveling the financial difficulties that befell the dealerships.  After reviewing the allegations contained in the Complaint and the subsequent filings of Ford Credit in the bankruptcy cases, Reagor and Dykes caused the Reagor-Dykes dealerships to hire and seek approval of an independent chief restructuring officer, BlackBriar Advisors, LLC (the "CRO").  The CRO has control of all the information and documents related to the dealerships, and has been diligently working on reorganization of the Reagor-Dykes dealerships, which would impact this case.

Also, in a conciliatory attempt to resolve a path forward in the bankruptcy, the Reagor-Dykes dealerships have refrained from seeking (a) Ford Credit documents, (2) Ford Credit communications (including those between Smith and his long-time friend Byrd, who is the Ford Credit employee that managed the Reagor-Dykes dealerships account with Ford Credit); and (C) Ford Credit's audit results (which regularly praised the Reagor-Dykes dealerships and their operational performance).  Reagor-Dykes has also not sought Byrd's private communications with Smith, nor have they attempted to

understand why Byrd's daughter's boyfriend worked for Reagor-Dykes without the ownership group's knowledge and how much was earned by this relationship.

Consequently, Reagor and Dykes are in the position of not having access to much of their own information and documents, or the information and documents from the companies they own, as they cannot distract the CRO from the duties that they voluntarily referred to the CRO through pleadings filed with the Bankruptcy Court. Reagor and Dykes also do not have access to the Ford Credit documents at this time. Thus, Reagor and Dykes have been unable to obtain sufficient information to defend this litigation.

Moreover, it is Reagor and Dykes' understanding that Ford Credit has refused to open its doors to any effort at discovery about its activities. In a related proceeding between some banks that includes the Reagor-Dykes dealerships, Ford Credit has refused to provide any substantive information in response to the banks' discovery requests.

**F.     Conclusion**

Reagor and Dykes have the right to defend themselves in this action, and the relief they request can be accomplished within the deadlines established by the Court's scheduling order. Although the bankruptcy of the Reagor-Dykes dealerships has made it difficult for Reagor and Dykes to obtain relevant information, the ongoing bankruptcy also shows that Ford Credit's summary judgment motion is premature and should be deferred. Moreover, negotiations relating to the plan of reorganization between all parties in interest, including the Reagor-Dykes dealerships and Ford Motor Credit, are

ongoing at this time.   Reagor and Dykes are not seeking the relief requested herein to delay the proceedings, but so that justice may be done.

**WHEREFORE, PREMISES CONSIDERED**, Defendants Bart Reagor and Rick Dykes respectfully pray that this Honorable Court grant their Motion to Defer Consideration of Plaintiff's Motion for Summary Judgment and to Take Discovery, and for such other relief, at law and in equity, to which they may show themselves justly entitled.

Respectfully submitted,

 */s/ Marshall M. Searcy, Jr.*
Marshall M. Searcy, Jr.
State Bar No. 17955500
marshall.searcy@kellyhart.com
Scott R. Wiehle
State Bar No. 24043991
scott.wiehle@kellyhart.com
KELLY HART & HALLMAN, LLP
201 Main Street, Suite 2500
Fort Worth, Texas  76102
Telephone:  (817) 332-2500
Telecopy:  (817) 878-9280
**ATTORNEYS FOR BART REAGOR**

 */s/ Tom Kirkendall*
Tom Kirkendall
State Bar No. 11517300
Law Office of Tom Kirkendall
2 Violetta Court
The Woodlands, Texas 77381-4550
Telephone: (281) 364-9946
Telecopy:  (888) 582-0646
bigtkirk@kir.com
**ATTORNEY FOR RICK DYKES**

## CERTIFICATE OF CONFERENCE

I certify that I conferred with Ford Credit's counsel on January 24, 2019, regarding the relief sought by this motion.  Ford Credit's counsel informed me on January 25, 2019, that Ford Credit is opposed to the motion.  It is therefore submitted to the Court for consideration.

*/s/ Scott Wiehle*

Scott Wiehle

## CERTIFICATE OF SERVICE

I certify that a true and correct copy of the foregoing was delivered to the following parties in accordance with the Federal Rules of Civil Procedure on January 25, 2019.

| | |
|---|---|
| Keith A. Langley | Craig A Leslie |
| Brandon K. Bains | Joanna Dickinson |
| Langley LLP | Phillips Lytle LLP |
| 1301 Solana Blvd | One Canalside |
| Bldg 1, Ste 1545 | 125 Main Street |
| Westlake, TX 76262 | Buffalo, NY 14203 |
| Email: klangley@l-llp.com | Email: cleslie@phillipslytle.com |
| Email: bbains@l-llp.com | Email: jdickinson@phillipslytle.com |

*/s/ Marshall M. Searcy, Jr.*

Marshall M. Searcy, Jr.