IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
LUBBOCK DIVISION

| | | |
|---|---|---|
| FORD MOTOR CREDIT COMPANY LLC, | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | |
| | § | Civil Action No.: 5:18-cv-00186 |
| BART REAGOR AND | § | |
| RICK DYKES, | § | |
| Defendants. | § | |

**FORD MOTOR CREDIT COMPANY LLC'S BRIEF IN
OPPOSITION TO DEFENDANTS' RULE 56(d) MOTION TO
DEFER CONSIDERATION OF PLAINTIFF'S MOTION FOR
<u>SUMMARY JUDGMENT AND TO TAKE DISCOVERY</u>**

Respectfully submitted,

**BAKER BOTTS LLP**

Michael S. Goldberg
State Bar No. 08075800
One Shell Plaza
910 Louisiana Street
Houston, Texas 77002
713-229-1234
713-229-1522 (Fax)
michael.goldberg@bakerbotts.com

**BAKER BOTTS LLP**

Jessica B. Pulliam
State Bar No. 24037309
2001 Ross Avenue, Suite 900
Dallas, TX 75201
214-953-6500
214-953-6503 (Fax)
jessica.pulliam@bakerbotts.com

**LANGLEY LLP**

Keith A. Langley
State Bar No. 11919500
Brandon K. Bains
State Bar No. 24050126
1301 Solana Blvd.
Building 1, Suite 1545
Westlake, Texas 76262
214-722-7171
214-722-7161 (Fax)
klangley@l-llp.com
bbains@l-llp.com

**PHILLIPS LYTLE LLP**

Craig A. Leslie
One Canalside
125 Main Street
Buffalo, New York 14203
716-847-8400
716-852-6100 (Fax)
cleslie@phillipslytle.com

**ATTORNEYS FOR PLAINTIFF**

# TABLE OF CONTENTS

**I.** PRELIMINARY STATEMENT ............................................................................................. 1

**II.** BACKGROUND ................................................................................................................. 3

**III.** LEGAL STANDARD ......................................................................................................... 4

**IV.** ARGUMENTS AND AUTHORITIES ............................................................................... 5

   **A.** Ford Credit's Motion for Summary Judgment is not "premature." .................................. 5

   **B.** Defendants' arguments based on potential affirmative defenses fall far short of their
      Rule 56(d) burden and cannot support their motion. ......................................................... 6

   **C.** Defendants cannot support their Rule 56(d) motion by arguing that they need
      discovery concerning damages, offsets, or liquidation of collateral................................ 13

   **D.** Delaying proceeding on Ford Credit's Motion for Summary Judgment would
      jeopardize assets that are available to satisfy a judgment................................................ 15

**V.** CONCLUSION ................................................................................................................. 16

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Am. Family Life Assurance Co. v. Biles*,
   714 F.3d 887 (5th Cir. 2013) ...............................................................5, 6

*Bank of China v. Chan*,
   937 F.2d 780 (2d Cir. 1991)...................................................................10

*Baskin v. Mortg. & Tr., Inc.*,
   837 S.W.2d 743 (Tex. App.—Houston [14th Dist.] 1992, writ denied)...................10

*BDO USA, LLP v. Litex Indus., Ltd.*,
   No. 05-15-00358-CV, 2016 WL 3198503 (Tex. App.—Dallas May 26, 2016, no pet.)
   (mem. op.)........................................................................................10

*Beattie v. Madison County School Dist*,
   354 F.3d 606 (5th Cir. 2001) ..................................................................8

*Compass Bank v. Hall*,
   Civil Action No. H–10–107, 2010 WL 2179720 (S.D. Tex. May 28, 2010) ..............13

*Crawford v. Metro. Life Ins. Co.*,
   No. 17-11058, 2018 WL 6261877 (5th Cir. Nov. 28, 2018) (per curiam) ..............13

*Guerra v. Wells Fargo Bank*,
   Civil Action No. SA–15–CV–763–XR, 2015 WL 9451083 (W.D. Tex. 2015)...............10

*Hoffman v. AmericaHomeKey, Inc.*,
   23 F. Supp. 3d 734 (N.D. Tex. 2014) ......................................................10

*Hometown 2006-1 1925 Valley View, L.L.C. v. Prime Income Asset Management, L.L.C.*,
   595 F. App'x. 306 (5th Cir. 2014) ..........................................................13

*In re Allied Supermarkets, Inc.*,
   951 F.2d 718 (6th Cit. 1991).................................................................10

*Jacked Up, L.L.C. v. Sara Lee Corp.*,
   854 F.3d 797 (5th Cir. 2017) ...........................................................2, 4, 5

*McKay v. Novartis Pharm. Corp.*,
   751 F.3d 694 (5th Cir. 2014) ..................................................................5

*Mendez v. Poitevent*,
   823 F.3d 326 (5th Cir. 2016) ...........................................................2, 6, 9

*Smith v. Reg'l Transit Auth.*,
  827 F.3d 412 (5th Cir. 2016) ...................................................................................5

*Washington v. Allstate Ins. Co.*,
  901 F.2d 1281 (5th Cir. 1990) ................................................................................5

**OTHER AUTHORITIES**

Fed. R. Civ. P. 56 .....................................................................................................5

Fed. R. Civ. P. 56(b) ................................................................................................6

Fed. R. Civ. P. 56(d) ................................................................................................4

# I. **PRELIMINARY STATEMENT**

Bart Reagor and Rick Dykes ("Defendants") admit that they signed absolute and unconditional personal guarantees to pay all amounts owed by the now bankrupt Reagor-Dykes dealerships—dealerships that have admitted they owe Ford Motor Credit Company LLC ("Ford Credit") at least $109,091,460.95 following a massive fraud occurring on Defendants' watch.[1] Ford Credit's Motion for Summary Judgment (Doc. 28) establishes that Defendants admit to executing these unconditional personal guarantees, which expressly waive "all setoffs and counterclaims" as well as "presentment, demand, protest and notice of non-payment or protest as exemptions, rights of dower and homestead laws and any other demands and notices required by law," and related documents declaring that Defendants have "no defense, claim, charge, plea or set-off whatsoever in law or equity."[2]

Defendants' Rule 56(d) Motion poses these questions: Should this Court further delay Reagor's and Dykes's obligations to respond to Ford Credit's Motion for Summary Judgment because they speculate they *may attempt* to assert defenses that they have not yet even pleaded and for which they cannot assert any factual or legal basis? Should the Court do so even though Reagor and Dykes have *not sent a single discovery request* to Ford Credit despite having had four months to do so? And should the Court further delay summary judgment proceedings and risk the dissipation of Reagor's and Dykes's assets available to satisfy a judgment?

To answer these questions "no," the Court need not look further than a well-developed

---

[1]     The Reagor-Dykes dealerships (the "Dealerships") included Reagor-Dykes Amarillo, L.P., Reagor Dykes Auto Company, L.P., Reagor-Dykes Floydada, L.P., Reagor-Dykes Imports, L.P., Reagor-Dykes Motors, L.P., and Reagor-Dykes, Plainview, L.P., each of which entered into wholesale financing and other agreements with Ford Credit, and whose obligations were guaranteed by the Defendants.

[2]     Doc. 29, Exs. C at A21, D at A24, F at A35, H at A47, P at A100–104, Q at A106-110, D at A118, U at A131, W at A141, X at A145; Doc. 30, Exs. C at A22, D at A25, F at A36, H at A46, P at A100, Q at A106-110, S at A119, U at A132, W at A142, and X at A146.

1

body of binding Fifth Circuit precedent demonstrating that Rule 56(d) is not available in these circumstances. *See infra* Section IV.B. Rule 56(d) applies only when the non-movant satisfies the burden of demonstrating "how additional discovery will create a genuine issue of material fact." *Jacked Up, L.L.C. v. Sara Lee Corp.*, 854 F.3d 797, 815 (5th Cir. 2017). Reagor's and Dykes' inflammatory accusations and sheer speculation do not come close to satisfying this standard. *See, e.g.*, *Mendez v. Poitevent*, 823 F.3d 326, 336 (5th Cir. 2016) (district court did not abuse its discretion in implicitly denying Rule 56(d) relief when "the result of the discovery sought was 'wholly speculative'"). Regardless, Defendants surmise and innuendo that "something is amiss" (Doc. 33 at 15) cannot give rise to any viable defense to Ford Credit's claims or its motion for summary judgment given the unconditional guarantees and waivers to which Reagor and Dykes agreed. *See infra* Section IV.B.

Not only have Defendants fallen far short of the high burden to demonstrate that Rule 56(d) relief is appropriate but there is also an independent reason for denying their motion. A further delay in resolving Ford Credit's Motion for Summary Judgment may facilitate efforts to liquidate assets available to satisfy Reagor's and Dykes's obligations and frustrate Ford Credit's right to recover. Reagor and Dykes admit they executed absolute and unconditional guarantees for the Dealerships, and they face a judgment exceeding $100 million in this case for their joint and several obligations under those guarantees and related agreements (an amount likely exceeding their combined assets). Yet Reagor and Dykes did not submit themselves or their own assets to the bankruptcy proceedings involving the Dealerships, and nothing is keeping them from liquidating or dissipating their assets and placing them beyond the reach of a judgment in this case.

Because Defendants do not qualify for Rule 56(d) relief, and no further delay in the summary judgment proceedings is appropriate, the Court should deny Defendants' motion.

2

## II. <u>BACKGROUND</u>

On July 31, 2018, Ford Credit filed this breach of contract lawsuit against Defendants and the Dealerships.  Doc. 1.  Ford Credit sued after discovering that the Dealerships: (1) sold over 1,100 vehicles without repaying $41 million dollars that Ford Credit advanced to finance the acquisition of those vehicles; (2) falsely reported sales dates to Ford Credit to delay repaying amounts owed to it; (3) requested financing on the same vehicle, multiple times (double-floored); and (4) floored vehicles which had already been sold.  *See id.*

On August 1, 2018, the Dealerships filed for Chapter 11 relief (the "Bankruptcy Proceedings").  *See* Bankruptcy Case 18-50214, Doc. 1 and Doc. 159 at ¶ 4.  On August 8, 2018, the Court severed Ford Credit's claims against the Dealerships.  Doc. 10.

On August 17, 2018, Ford Credit amended its Complaint against Defendants.  Doc. 11.  On September 13, 2018, the non-bankrupt Defendants answered.  Doc. 21.

On September 20, 2018, Ford Credit served its First Set of Interrogatories and First Request for Production of Documents upon Defendants.  App. Ex. A.  On November 2, 2018, without responding to those requests, three of the remaining non-bankrupt defendants—Reagor Auto Mall I, L.L.C., Reagor-Dykes II, L.L.C., and Reagor-Dykes III, L.L.C.—filed for Chapter 11 relief.  *See* Bankruptcy Cases 18-50322, 18-50323, and 18-50325.  On November 7, 2018, the only remaining defendants—Bart Reagor and Rick Dykes—responded to Ford Credit's discovery demands. App. Ex. B.  On December 27, 2018, the Court granted Ford Credit's motion to sever the remaining entities (Doc. 26), thereby leaving only Mr. Reagor and Mr. Dykes as defendants in this action. Doc. 27.

From September 14, 2018 to the present—a four-month period—Defendants have failed to serve a single discovery demand or request any discovery from Ford Credit.

On January 7, 2019, Ford Credit moved for summary judgment.  Docs. 28–30.  Ford Credit

3

filed that motion almost four months after the Court issued its Scheduling Order.  *See id.*

That motion demonstrates Ford Credit's entitlement to summary judgment on: (1) Defendants' liability under their absolute and unconditional guarantees; and (2) damages.  *See* Doc. 29 at 17–25.

Defendants needed to respond to that motion by January 28, 2019.  On January 25, 2019, Defendants contacted Ford Credit to seek, for the first time, consent to a Rule 56(d) motion.

Ford Credit asked what discovery Defendants needed to respond to the motion. Defendants: (1) stated a desire for unspecified discovery, generally; (2) could not explain the relevance of any discovery to the motion; and (3) could not estimate how long Defendants would need to complete discovery.

On January 25, 2019, Ford Credit declined consent, in writing, to Defendants' requests for: (1) more time to respond to its motion; and (2) unspecified discovery.  App. Ex. C.

Counsel for Defendants then filed their motion pursuant to Rule 56(d).  Doc. 33.

Defendants did not serve any discovery demands upon, or seek any discovery from, Ford Credit.

## III. <u>LEGAL STANDARD</u>

Under Federal Rule of Civil Procedure 56(d), "[i]f a nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition, the court may: (1) defer considering the motion or deny it; (2) allow time to obtain affidavits or to take discovery; or (3) issue any other appropriate order."

A party seeking Rule 56(d) relief "must demonstrate how additional discovery will create a genuine issue of material fact."  *Jacked Up*, 854 F.3d at 815 (citations and internal quotation marks omitted) (affirming denial of Rule 56(d) relief when energy drink manufacturer failed to submit supporting affidavit or show that it diligently pursued discovery).

4

Specifically, that party "must 'set forth a plausible basis for believing that specified facts, susceptible of collection within a reasonable time frame, probably exist and indicate how the emergent facts, if adduced, will influence the outcome of the pending summary judgment motion.'" *Id.* at 816 (quoting *Am. Family Life Assurance Co. v. Biles*, 714 F.3d 887, 894 (5th Cir. 2013) (affirming denial of Rule 56(d) relief)). The Fifth Circuit rejects "[v]ague assertions that discovery will produce needed, but unspecified facts." *See id.* (quoting *Washington v. Allstate Ins. Co.*, 901 F.2d 1281, 1285 (5th Cir. 1990)).[3]

The party "must also have 'diligently pursued discovery.'" *Id.* (quoting *McKay v. Novartis Pharm. Corp.*, 751 F.3d 694, 700 (5th Cir. 2014) (affirming denial of Rule 56(d) relief in light of dilatory discovery)).

The Fifth Circuit reviews Rule 56(d) rulings for abuse of discretion. *See id.* The Fifth Circuit "has found an abuse of discretion where it can identify a *specific piece of evidence* that would likely create a material fact issue." *Id.* (emphasis added). In contrast, there has been "no abuse of discretion where the party filing the Rule 56(d) motion has failed to identify sufficiently specific or material evidence to affect a summary judgment ruling." *Id.*

## IV. <u>ARGUMENTS AND AUTHORITIES</u>

### A.   Ford Credit's Motion for Summary Judgment is not "premature."

Defendants claim, with no supporting authority, that Ford Credit's Motion for Summary Judgment is "premature" merely because Ford Credit filed it before the dispositive motion deadline set in this Court's Scheduling Order. Doc. 33 at 10. The Motion for Summary Judgment is not

---

[3]      In the 2010 Amendment to Rule 56, "Subdivision (d) carries forward without substantial change the provisions of former subdivision (f)." Fed. R. Civ. P. 56, Committee Notes. The Fifth Circuit cites to former Rule 56(f) and current Rule 56(d) cases interchangeably. *See, e.g.*, *Smith v. Reg'l Transit Auth.*, 827 F.3d 412, 422–23 (5th Cir. 2016) (affirming, in part, denial of Rule 56(d) motion to compel) (citing pre-2010 cases while setting out the Rule 56(d) standard).

premature.  Nothing in this Court's Scheduling Order, the Local Rules, or the Federal Rules of Civil Procedure should prevent Defendants from being required to respond.

This Court issued a Scheduling Order on September 14, 2018, at which time the parties were free to engage in discovery.  Doc. 24.  Ford Credit waited almost four months after that time and almost two months after Ford Credit served its own discovery demands before filing its Motion for Summary Judgment.  Rule 56(b) allows a party to file a motion for summary judgment "***at any time***" until thirty days after the close of discovery.  Fed. R. Civ. P. 56(b) (emphasis added).  This Court's Scheduling Order does not contain any provisions making exception to this Rule or somehow disallowing Ford Credit from moving for summary judgment before the Scheduling Order's deadline.  Doc. 29 at 17–25.  Nor do the Local Rules of this Court provide any exception to Ford Credit's right to file a motion for summary judgment "at any time."  Fed. R. Civ. P. 56(b).  A party should not be allowed to duck its obligation to respond merely by labeling a timely filed motion for summary judgment as "premature."

**B.**     **Defendants' arguments based on potential affirmative defenses fall far short of their Rule 56(d) burden and cannot support their motion.**

Unable to find support in the law for the claim that Ford Credit's Motion for Summary Judgment is premature, Reagor and Dykes resort to Rule 56(d) to avoid responding.  They correctly acknowledge that the Rule places upon them the burden to "demonstrate[] to [the Court] with reasonable specificity how the requested discovery" pertains to Ford Credit's pending Motion for Summary Judgment and "how the additional discovery will likely create a genuine issue of material fact."  Doc. 33 at 9.  But they fall far short of this standard.  Instead, they support their motion with the kind of rank speculation that is routinely rejected when courts deny Rule 56(d) motions.  *See, e.g.*, *Mendez*, 823 F.3d at 336 (affirming implicit denial of Rule 56(d) relief); *Biles*, 714 F.3d at 894 (affirming denial of Rule 56(d) relief).

6

Reagor and Dykes identify only *questions* about whether they *might* be able to assert *potential* affirmative defenses *which they have not yet even pleaded*—(1) questions "[w]hether Ford Credit failed to use ordinary care"; and (2) vague and unsupported innuendo concerning "[w]hether Ford Credit aided and abetted" the Dealerships' admitted fraud and breach of fiduciary duty. Doc. 33 at 12. The only support on which Defendants rely are two declarations—one of the Chief Restructuring Officer in the Dealerships' bankruptcy proceedings and another of Reagor's counsel. Yet these declarations are irrelevant to their unpleaded affirmative defenses concerning Ford Credit's supposed conduct and thus do not come close to showing how Defendants' requested discovery is likely to create a genuine issue of material fact. While the potential affirmative defenses on which Defendants base their Rule 56(d) motion concern rank speculation and wholly unsupported allegations about Ford Credit's conduct, the declarations address only Defendants' inability to access information about *themselves* and the Dealerships.

What is left to support Defendants' motion is a fanciful scattershot of smear against Ford Credit that finds no support in Defendants' motion and, at bottom, makes no sense. Their brief makes unsupported claims that a Ford Credit employee had a good, longstanding relationship with his contact at the Dealerships; speculates (without specification) that the Dealerships somehow knew in advance about the timing of quarterly audits; and insinuates something (exactly what is unclear) from the claim that the boyfriend of a daughter of a Ford Credit employee supposedly worked at one of the Dealerships. From this, Defendants conclude vaguely that "something is amiss." Doc. 33 at 15.[4] The only thing that is amiss is Defendants' effort to hit the Rule 56(d)

---

[4]    Defendants' Brief is chock-full of rank speculation. *See* Doc. 33 at 4 n.5 ("[I]t *seems highly unlikely* that the dealership could cover up out of trust sales to this extent . . ."); *id.* at 10 (emphasis added); *id.* ("The . . . bankruptcy is quite complicated and much remains disputed and unknown"); *id.* at 12 ("[Defendants] contend that Ford Credit *may have caused* the . . . Dealerships to incur the debt"); *id.* at 13 ("[Defendants] contend that Byrd (and perhaps other Ford Credit employees), as the lender, *may have aided and abetted* Smith"); *id.* at 15 ("[I]t is *certainly plausible* that Ford Credit . . . participated in the deepening insolvency of the [D]ealerships").

target.  Their vague speculation has not even been a sufficient basis on which to plead the potential affirmative defenses mentioned in their brief, and it is not sufficient to support Rule 56(d) relief for at least three reasons.

*First*, Rule 56(d) does not allow a party to take advantage of its own delay in seeking discovery by dodging its obligation to respond to a motion for summary judgment.  The Court should deny Defendants' Rule 56(d) motion as dilatory because Defendants have had sufficient time to conduct discovery from Ford Credit to support their potential affirmative defenses.  *Cf.* Doc. 33 at 14, 22.  Defendants have had four months to conduct discovery but failed to send a single request in that time.

The Fifth Circuit has concluded that denial of a Rule 56(d) motion is proper when a non-movant has failed to take advantage of even less time to take discovery.  In *Beattie*, the Fifth Circuit affirmed a denial of a Rule 56(d) motion by a former employee who delayed taking the deposition of named defendants by "several months."  354 F.3d at 606.  The former employee's excuse was similar to that which Defendants assert in their motion.  She claimed she "did not depose them earlier because the parties were in settlement negotiations."  *Id.*  The Fifth Circuit rejected that reasoning, just as this Court should reject Defendants' excuse that they have "refrained from seeking" Ford Credit documents "in a conciliatory attempt to resolve a path forward in bankruptcy."  Doc. 33 at 17.  Only one thing is clear about Defendants' vague allegations from which they speculate they may cobble together one or more affirmative defenses—the potential affirmative defenses concern Ford Credit, not the Dealership documents tied up in the bankruptcy.  Nothing about the bankruptcy and certainly nothing in this case has prevented Defendants from requesting discovery from Ford Credit, and, in any event, no discovery will change the uncontroverted facts that a huge monetary deficiency exists, and the guarantors are contractually

8

obligated to pay it.  Defendants' delay in seeking discovery is no reason to further delay proceeding on Ford Credit's Motion for Summary Judgment.

*Second*, Defendants' slanderous speculation and innuendo cannot support Rule 56(d) relief.  Even Defendants agree that to obtain Rule 56(d) relief, a non-movant must demonstrate *with specificity* how the requested discovery will *likely create a genuine issue of material fact*. Vague guesses do not come close to that high bar.  In *Mendez*, for example, the Fifth Circuit affirmed an implicit denial of Rule 56(d) relief.  823 F.3d at 336.  In that civil rights case, a decedent's family sought discovery to disprove the applicability of sovereign immunity to the conduct of a border patrol agent.  *Id.* at 336.  The Court rejected as "vague" the assertion that a delay would allow for "further discover[y] [of] the facts from the witnesses who saw the scuffle" and focused on the family's failure to "identify specific facts . . . that would alter the district court's analysis."  *Id.*  Because the family did not demonstrate how additional discovery would likely raise a fact issue, *Mendez* determined that Rule 56(d) relief was unwarranted.  *Id.*

Here, Defendants have not presented any facts that would demonstrate that it is "likely" that they could create a fact issue concerning Ford Credit's alleged negligence or its participation in a massive fraud—against itself.  Defendants are suggesting that Ford Credit was somehow complicit in their own Dealerships' massive fraud against Ford Credit.  Yet they have not even hinted at a single fact that would support such bizarre speculation nor demonstrated any motive. They make only the unsupported claim that the Dealerships knew in advance (not necessarily from Ford Credit) about certain audits (while acknowledging the Dealership was surprised by the audit that uncovered the $100 million fraud) and include in their brief a single sentence about a Ford Credit employee's daughter's boyfriend.  This utter lack of specificity falls far short of the Rule 56(d) standard.

Defendants' allegations are not only factually vague and non-specific but the potential affirmative defenses of negligence and participating in breaching a duty also lack any legal basis. Texas law does not recognize a claim or defense for allegedly negligent lending. *Baskin v. Mortg. & Tr., Inc.*, 837 S.W.2d 743, 747 (Tex. App.—Houston [14th Dist.] 1992, writ denied); *see also BDO USA, LLP v. Litex Indus., Ltd.*, No. 05-15-00358-CV, 2016 WL 3198503, at *14 (Tex. App.—Dallas May 26, 2016, no pet.) (mem. op.) (holding that, under Texas law, businesses are under no duty to act as a "reasonably prudent" business).[5]  Under Texas law, a commercial lender such as Ford Credit does not owe commercial borrowers such as the Dealerships, or the owners or principals of such borrowers, a fiduciary duty—or even a duty of good faith and fair dealing. *Guerra v. Wells Fargo Bank*, Civil Action No. SA–15–CV–763–XR, 2015 WL 9451083, at *5 (W.D. Tex. 2015) ("Under Texas law, the relationship between a borrower and its lender generally does not create a fiduciary duty or impose a duty of good faith and fair dealing.").[6]

Defendants' potential affirmative defenses would fail as a matter of law because Defendants cannot establish that Ford Credit owed any duty to disclose to them any information that Defendants suggest they might uncover during discovery.  *See, e.g., Hoffman v. AmericaHomeKey, Inc.*, 23 F. Supp. 3d 734, 744–45 (N.D. Tex. 2014) (dismissing fraudulent omission claim when plaintiffs failed to plead sufficient facts from which the court could infer a duty to disclose allegedly omitted facts).

***Third***, Defendants affirmatively waived the very same affirmative defenses they assert additional discovery will support.  Defendants executed multiple guarantees of: (1) the floorplan

---

[5] To the extent that Defendants argue to the contrary, citing to *Bank of China v. Chan*, 937 F.2d 780 (2d Cir. 1991) and *In re Allied Supermarkets, Inc.*, 951 F.2d 718 (6th Cit. 1991), neither of those cases applied Texas law.  As a result, those cases do not bind this Court.

[6] The cases cited by the Defendants, regarding the duty of good faith and fair dealing that applies to other types of contractual relationships, are inapposite to the relationship between a commercial lender such as Ford Credit and commercial borrowers such as the Dealerships and Defendants.

financing that Ford Credit extended to the Dealerships; and (2) a Capital Loan that Ford Credit extended to the Dealerships.  *See* Doc. 29 at ¶¶ 12–45.

The guarantees Defendants executed require them to, among other things, pay "all sums due and to become due" to Ford Credit from the Dealerships, without Ford Credit having to first proceed against the Dealerships themselves or having to foreclose upon or liquidate collateral. Doc. 30, Exs. C, D, F, H, P, Q, S, U, W, and X.

By executing those guarantees, Defendants "jointly and severally, and unconditionally" guaranteed that the Dealerships would pay and discharge all of their "present and future" obligations to Ford Credit.  Doc. 30, Exs. C at A21, D at A25, F at A35, H at A45, P at A100, Q at A106-110, S at A118, U at A131, W at A141, and X at A145.

Defendants also waived "notice of acceptance hereof and of presentment, demand, protest and notice of non-payment or protest as exemptions, rights of dower and homestead laws and any other demands and notices required by law," as well as "all setoffs and counterclaims."  Doc. 30, Exs. C at A22, D at A25, F at A36, H at A46, P at A100, Q at A106-110, S at A119, U at A132, W at A142, and X at A146.

In their Capital Loan guarantees, Defendants also waived "all other rights and defenses, the assertion or exercise of which would in any way diminish" their liability to Ford Credit.  App. Ex. D at APP. 084.

The wholesale obligations of the Dealerships were cross-defaulted and cross-collateralized with one another.  *See* Doc. 11 at 89–93; App. Exs. E, F, G.  Defendants guaranteed all of the Dealerships' obligations and, as "Obligors" and "Guarantors" under the cross-default and cross-collateralization agreements: "absolutely, irrevocably and unconditionally" reaffirmed their guarantees to Ford Credit; acknowledged and declared that they had "no defense, claim, charge,

plea or set-off whatsoever in law or equity" against Ford Credit; and again waived and released "any and all defenses" that might accrue to them by executing those agreements.  *See* App. Ex. G at APP. 107, 111.   The plain text of the Amended and Restated Cross-Default and Cross-Collateralization Agreement unmistakably ties together all of Defendants' obligations—including the obligation to waive all defenses, claims, charges, please, or setoffs against Ford Credit—into "*any other* instrument or document executed by Each Obligor in connection with the Guaranty or th[at] Agreement."[7]  App. Ex. G at APP. 106–07, 11.

Defendants also executed reaffirmations of their guarantees of the indebtedness of all of the Dealerships, and once again stated that they had "no defense, claim or set-off, whether at law or equity," against Ford Credit or Ford Credit's rights under their guaranty of the cross-defaulted and cross-collateralized indebtedness owed to Ford Credit, and that they waived and released "any and all defenses which might accrue" to them as a result of Ford Credit and all of the Dealerships entering into the Capital Loan agreements and/or amendments.  App. Ex. D at APP. 089.

The Defendants' various guarantees and reaffirmations of guarantees, as well as the cross-default and cross-collateralization agreements therefore include clear and unambiguous waivers of all defenses, setoffs and counterclaims.  *See* App. Ex. D at APP. 089, E at APP. 096, F at APP. 101, G at APP. 107; Doc. 30, Exs. C at A22, D at A25, F at A36, H at A46, P at A100, Q at A106-110,

---

[7] That agreement provides: "[a]s a condition of the financing evidenced on Schedule A, Lender has required that each of the Loans be cross-defaulted and cross-collateralized with each other Loan[.]"  *Id.*  It defines "Loans" as "each of the Loans as listed in Schedule A."  *Id.*  Schedule A lists seven specific loans.  *Id.*  Importantly, it contains an extremely broad catch-all provision.  *Id.*  Namely, it extends to "*any and all* other loans now or hereafter outstanding made by Lender *to any Obligor*, and *any and all* extensions, increases, amendments, renewals, and modifications of the foregoing."  *Id.* (emphasis added).  It also defines "Obligations" as "[*a]ny and all* of the covenants, promises and other obligations . . . made or owing by the Obligors and others to or due to Lender under the . . . documents evidencing the Loans."  *Id.* (emphasis added) (excepting "Indebtedness" which the agreement defines as "[t]he principal of and interest on all payments . . . due under the Loans and all of indebtedness of each Obligor to Lender under . . . the Security Documents").  In that agreement, Defendants waived all "defense[s], claim[s], charge[s], plea[s] or set-off[s] . . . against the Lender, the Guaranty, [that Agreement] or *any other* instrument or document executed by Each Obligor in connection with the Guaranty or this Agreement."  *Id.* (emphasis added).  That agreement, which Defendants admit executing, *see* Doc. 21 at 30; Doc. 23 at 31, contains broad, interrelated definitions that lead to an unambiguous conclusion: the parties intended to tie all agreements together.

S at A119, U at A132, W at A142, and X at A146.

Defendants' waivers of affirmative defenses are clear, unambiguous, valid and enforceable. *See, e.g.*, *Hometown 2006-1 1925 Valley View, L.L.C. v. Prime Income Asset Management, L.L.C.*, 595 F. App'x. 306, 310 (5th Cir. 2014) (applying Texas law) (holding that clear and specific waivers are enforced against guarantors, and even all-encompassing waivers will be enforced); *Compass Bank v. Hall*, Civil Action No. H–10–107, 2010 WL 2179720, at *2 (S.D. Tex. May 28, 2010).

Because Defendants have waived all defenses, setoffs, and counterclaims, their argument for unspecified discovery to pursue those alleged affirmative defenses does not (and cannot) satisfy their burden under Rule 56(d) because no discovery can create a genuine issue of fact. *See Crawford v. Metro. Life Ins. Co.*, No. 17-11058, 2018 WL 6261877, at *4 (5th Cir. Nov. 28, 2018) (per curiam) (more discovery would not give husband better chance at opposing summary judgment when at-issue life insurance "plan['s] text [wa]s clear, and none of the documents [the husband] claim[ed] he [wa]s entitled to c[ould] change that").

Defendants' failure to identify specific facts that would create any genuine issue of material fact that could defeat Ford Credit's entitlement to summary judgment defeats their own entitlement to Rule 56(d) relief.

**C.    Defendants cannot support their Rule 56(d) motion by arguing that they need discovery concerning damages, offsets, or liquidation of collateral.**

Defendants also assert that the Court should delay consideration of Ford Credit's motion for summary judgment in order to permit them to conduct discovery as to damages, potential offsets, and Ford Credit's liquidation of collateral.  These afterthought assertions also fail to satisfy Rule 56(d).

Defendants cannot, and do not, deny that the Dealerships admitted in their bankruptcy

13

schedules that, as of October 19, 2018, the Dealerships: (1) collectively owe Ford Credit $109,091,460.95; and (2) have not objected to Ford Credit's Proof of Claim. *See* Doc. 30, Ex. AA. Ford Credit's summary judgment motion and supporting evidence establishes the indebtedness of each of the Dealerships under their respective wholesale financing and capital loan agreements with Ford Credit, as well as the pre- and post-default interest rates applicable to the indebtedness of each of the Dealerships. Doc. 30, Ex. A. ¶¶ 47–54.

Defendants have admitted that they executed unconditional and absolute guarantees. In doing so, Defendants also expressly waived "all setoffs and counterclaims." Doc. 30, Exs. C at A22, D at A25, F at A36, H at A46, P at A100, Q at A106-110, S at A119, U at A132, W at A142, and X at A146. Accordingly, and as a matter of law, Defendants cannot raise a fact question concerning damages.

Defendants also ask this Court to delay considering Ford Credit's motion because Ford Credit may be entitled to secure and liquidate its collateral. But that argument ignores the guarantees' plain text:

> *[E]ach of the undersigned Guarantors* hereby, jointly and severally, and unconditionally, guarantees to you, your successor or assigns that the Dealer will fully, promptly, and faithfully perform, pay and discharge all Dealer's present and future obligations to you; and *agrees*, *without your first having to proceed against Dealer or to liquidate paper or any security therefor*, to pay on demand all sums due and to become due to you from Dealer and all losses, costs, attorney's fees or expenses which you may suffer by reason of Dealer's default.

Doc. 29, Ex. C at A21 (emphasis added); *see also* Doc. 29 Exs. D at A25, F at A35, H at A45, P at A100, Q at A106-110, S at A118, U at A131, W at A141, and X at A145. Ford Credit is entitled to immediate judgment against Defendants in the total amount of the outstanding indebtedness owed by the Dealerships, regardless of any effort to "collect or otherwise liquidate any obligation

or security."  The potential future liquidation of Ford Credit's collateral cannot serve as a basis to delay Ford Credit's motion, and no discovery could create a material issue of fact to defeat Ford Credit's entitlement to judgment against Defendants.  *See* Doc. 30, Exs. C–D, F, H, P–Q, S, U, W–X.

Ultimately, any proceeds that Ford Credit may realize from the liquidation of its collateral would merely result in a credit against the judgment entered against Defendants (just as with post-judgment garnishment).  Indeed, the judgment could specifically require Ford Credit to credit those proceeds accordingly.

**D.      Delaying proceeding on Ford Credit's Motion for Summary Judgment would jeopardize assets that are available to satisfy a judgment.**

Lurking behind Defendants' motion is this important reality: a delay in proceeding on Ford Credit's Motion for Summary Judgment would benefit Defendants and potentially prejudice Ford Credit.  Defendants Reagor and Dykes stood at the helm of the Dealerships, reaping the reward in good times.  They admittedly personally guaranteed the Dealerships' obligations to Ford Credit and face receiving a joint-and-several judgment in this case exceeding $100 million.  Although they placed the Dealerships in bankruptcy and subjected the Dealerships' assets to the bankruptcy proceedings and the judgments of the Chief Restructuring Officer, they did not subject themselves to the bankruptcy process.  Their own, personal assets—necessary to pay a judgment in this case— are not subject to those proceedings.  Accordingly, Reagor and Dykes may believe that they are free to liquidate or dissipate assets which otherwise would be used to satisfy a judgment in favor of Ford Credit.  Any further delay in the summary judgment proceedings would give Defendants additional time to potentially liquidate assets and place associated proceeds beyond the reach of Ford Credit and jeopardize the utility of a judgment in Ford Credit's favor.

15

# V. <u>CONCLUSION</u>

For these reasons, Ford Credit asks this Court to deny Defendants' Rule 56(d) motion (Doc. 33) to allow the Court to consider Ford Credit's pending motion for summary judgment (Doc. 28).


Respectfully submitted,

**BAKER BOTTS LLP**

By: <u>*/s/ Michael S. Goldberg*</u>
    Michael S. Goldberg
    State Bar No. 08075800
    One Shell Plaza
    910 Louisiana Street
    Houston, Texas 77002
    713-229-1234
    713-229-1522 (Fax)
    michael.goldberg@bakerbotts.com

**COUNSEL FOR PLAINTIFF**

*And*

    **LANGLEY LLP**
    Keith A. Langley, Esq.
    State Bar No. 11919500
    Brandon K. Bains, Esq.
    State Bar No. 24050126
    1301 Solana Blvd.
    Building 1, Suite 1545
    Westlake, Texas 76262
    214-722-7171
    214-722-7161 (Fax)
    klangley@l-llp.com
    bbains@l-llp.com

**COUNSEL FOR PLAINTIFF**

*And*

**BAKER BOTTS LLP**

Jessica B. Pulliam
State Bar No. 24037309
2001 Ross Avenue, Suite 900
Dallas, TX 75201
214-953-6500
214-953-6503 (Fax)
jessica.pulliam@bakerbotts.com

**COUNSEL FOR PLAINTIFF**

*And*

**PHILLIPS LYTLE LLP**
Craig A. Leslie, Esq.
One Canalside
125 Main Street
Buffalo, New York 14203
716-847-8400
716-852-6100 (Fax)
cleslie@phillipslytle.com

**COUNSEL FOR PLAINTIFF** *Pro Hac Vice*

## CERTIFICATE OF SERVICE

I hereby certify that on February 4, 2019, a copy of the foregoing Brief in Opposition to Defendants' Rule 56(d) Motion to Defer Consideration of Plaintiff's Motion for Summary Judgment and to Take Discovery was filed electronically.  Notice of this filing will be sent by operation of the Court's electronic filing system to all parties indicated on the electronic filing receipt.  All other parties will be served by regular U.S. mail. Parties may access this filing through the Court's electronic filing system.

*/s/ Michael S. Goldberg*

Michael S. Goldberg