IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
LUBBOCK DIVISION

| | | |
|---|---|---|
| FORD MOTOR CREDIT COMPANY LLC,<br>    Plaintiff, | §<br>§<br>§<br>§ | |
| v. | § | Civil Action No.: 5:18-cv-00186 |
| BART REAGOR AND RICK DYKES,<br>    Defendants. | §<br>§<br>§ | |

## DEFENDANTS' REPLY BRIEF IN SUPPORT OF THEIR RULE 56(d) MOTION TO DEFER CONSIDERATION OF PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND TO TAKE DISCOVERY

Pursuant to Rule 56(d) of the Federal Rules of Civil Procedure, Defendants Bart Reagor ("Reagor") and Rick Dykes ("Dykes") file this Reply Brief in Support of Their Motion to Defer Consideration of Plaintiff's Motion for Summary Judgment and to Take Discovery.

## I.
## PRELIMINARY STATEMENT

Rule 56(d) motions are "broadly favored and should be liberally granted because the rule is designed to safeguard non-moving parties from summary judgment motions that they cannot adequately oppose." *American Family Life Assur. Co. of Columbus v. Biles*, 714 F.3d 887, 894 (5th Cir. 2013). Despite this settled law, the gist of Ford Motor Credit Company, LLC's ("Ford Credit") Response seems to be that signing a guaranty agreement waives any and all defenses, justice and due process for the guarantors. That is not the law. Indeed, Rule 56(d) exists to safeguard parties like Reagor and Dykes so that they can take discovery to present facts essential to justify their opposition to Ford

Credit's summary judgment motion. Defendants' Motion complies with Rule 56(d)'s requirements and should be granted so that justice may be served in this case.

## II.
## ARGUMENT AND AUTHORITIES

**1. Reagor and Dykes are entitled to present defenses.**

Ford Credit's argument that Reagor and Dykes are not entitled to present defenses is contrary to the facts and law. The overwhelming majority of the guaranty agreements sued upon by Ford Credit do not waive the guarantor's ability to raise their own defenses or the defenses of the obligors. *See* Doc. 30-1, Exhibits B, C, D (related to Reagor-Dykes Plainview), E, F (related to Reagor-Dykes Imports), G, H, I, J, K, L, M, N, O, P (elated to Reagor-Dykes Motors), R, S (related to Reagor-Dykes Amarillo), T, U (related to Reagor-Dykes Floydada), V, W, X (related to Reagor-Dykes auto company). The only documents at issue wherein Reagor and Dykes purportedly waived defenses are the three Reaffirmation of Guaranties documents related to the parties' Capital Loan Guaranty.[1] *See* Doc. 30-1, Exhibit Q; Exhibit 30-1, App. 6, ¶ 23. Those documents, however, do not waive Reagor and Dykes' ability to assert defenses on behalf of the obligor.

The cases relied on by Ford Credit are distinguishable—the guaranty agreements contained specific language whereby the guarantor expressly waived any defenses.[2] That

---

[1] According to the declaration of Ford Credit employee Rene Leal, the indebtedness under the Capital Loan Guaranty is approximately $3.9 million, which is approximately 3% of the amount claimed by Ford Credit. [Doc. 30-1, App. 10)

[2] There is also authority that a fraud defense cannot be waived. *See National Westminster Bank USA v. Ross*, 676 F.Supp. 48, 53-54 (S.D.N.Y. 1987) (holding that guaranty providing for waiver of guarantor's counterclaims did not warrant dismissal of guarantor's counterclaims of

is not the case here. Thus, the controlling law remains:

(1) A guaranty agreement is construed strictly in favor of the guarantor under Texas law. *United States v. Vahlco Corp.*, 800 F.2d 462, 465 (5th Cir. 1986).

(2) A guaranty agreement may not be extended beyond its precise terms by construction or implication. *Reece v. First State Bank*, 566 S.W.2d 296, 297 (Tex. 1978).

(3) Guarantors have the right to raise any defenses to the guaranteed obligation that the principal may have. *Mayfield v. Hicks*, 575 S.W.2d 571, 574 (Tex.Civ.App.—Dallas 1978, writ ref'd n.r.e.).

Having the right to present defenses, Texas law has long recognized that "[a]ccompanying every contract is a common-law duty to perform with care, skill, reasonable expedience and faithfulness the thing agreed to be done." *Montgomery Ward & Co. v. Scharrenbeck*, 204 S.W.2d 508, 510 (Tex. 1947). Aiding and abetting a breach of fiduciary duty also gives rise to liability. *See, e.g., Kinzbach Tool Co. v. Corbett-Wallace Corp.*, 160 S.W. 509, 514 (Tex. 1942). Reagor and Dykes contend that Ford Credit may have violated these duties, causing the Reagor-Dykes dealerships to fail and voiding the guaranty agreements.

The factual contention for Reagor and Dykes' defense is as follows: Shane Smith, the former CFO of Reagor-Dykes, had a long-time relationship with Gary Byrd, who was Reagor-Dykes primary contact at Ford Credit. For years, Ford Credit had performed

---

fraud against lender); *MLP USA Inc. v. Motheral,* 2006 U.S. Dist. LEXIS 58589, at *2 (S.D.N.Y. Aug. 17, 2006) (A guarantee which "waives all defenses which constitute a legal or equitable discharge of a surety or guarantor" does not apply in a case where the guarantor alleges that the guarantee itself was obtained by deceit. *MLP USA Inc. v. Motheral,* 2006 U.S. Dist. LEXIS 58589, at *2 (S.D.N.Y. Aug. 17, 2006).

audits of the Reagor-Dykes dealerships with no issues. Indeed, Ford Credit complimented the Reagor-Dykes dealerships for their "fantastic results" in the June 2018 audit. Less than one month later, Ford Credit conducted an emergency audit and essentially seized control of the Reagor-Dykes dealerships—forcing them into bankruptcy.

Reagor and Dykes seek discovery to determine if Shane Smith was a rogue, lone wolf, or whether Ford Credit, through its operations, was complicit in Smith's scheme. If Ford Credit was complicit, Reagor and Dykes contend that the guaranty agreements are void. *See Hendricks v. Thornton*, 973 S.W.2d 348, 372 (Tex. App.—Beaumont 1998, pet. denied) ("It is settled as the law of this State that where a third party knowingly participates in the breach of duty of a fiduciary, such third party becomes a joint tortfeasor with the fiduciary and is liable as such." (quoting *Kinzbach Tool Co. v. Corbett–Wallace Corp.*, 138 Tex. 565, 160 S.W.2d 509, 514 (1942)); *Bank of China v. Chan*, 937 F. 2d 780, 789 (2d Cir. 1991) ("The bank's bad faith in handling the letters of credit and in causing [the primary obligor's] demise, if proved would be a complete defense to the guaranty."); *In re Allied Supermarkets, Inc.*, 951 F.2d 718, 728 (6th Cir. 1991) (misconduct by a creditor which has a material adverse effect on the rights or obligations of a guarantor voids the contract of guaranty between the parties).

**2. The limited discovery in the bankruptcy case.**

Reagor and Dykes are entitled to discovery from Ford Credit related to their defenses. In the bankruptcy case, Ford Credit refused to allow its employees to divulge

much relevant, discoverable information. For example, in the deposition of Gary Byrd, (Shane Smith's primary contact), Ford Credit refused to permit Byrd to testify to the following relevant information:

Q. And did you go to school together [with Shane Smith]?

   Mr. Langley: We're not going to go further into these areas. They don't relate to the issues before the bankruptcy court tomorrow.

Q. Have you ever – you and Mr. Smith socialized together?

   Mr. Langley: We're not going to respond to any such question that don't relate to the cash source and uses or the collateral positions of Ford Credit. [Doc. 34, App. 8]

Q. Have you and Mr. Smith, within the last two years, traveled or vacationed together?

   Mr. Langley: We won't respond to any such questions today. [Doc. 34, App. 8]

Q. When was the first time you talked to Mr. Smith about the double-flooring of vehicles?

   Mr. Langley: Instruct the witness not to answer. [Doc. 34, App. 8]

Q. Is it – the quarterly audit – is that standard for Ford Motor Credit on dealerships, or is it – is that unusual?

A. That's proprietary information, and I don't think I need to discuss that. That's confidential to my company on how we audit dealers.

Q. So you're refusing to answer that one.

   Mr. Langley: I'm instructing him not to answer. [Doc. 34, App. 13]

Q. Wouldn't – wouldn't you have been the person responsible at Ford Motor Company (sic) to determine whether these audit results that were – you received showing the 225 vehicles had been sold off the Floydada lot in seven business days prior to the audit, whether that was a red flag of fraud?

Mr. Langley: Objection. He's not going to answer. I instruct the witness not to answer this. [Doc. 34, App. 17]

Q. Well, my question is: Did you or anyone else at Ford note that a sale of 225 units off of the Floydada lot in the seven business days before June 28th would be a sale of practically the entire inventory of the lot?

Mr. Langley: Don't respond. [Doc. 34, App. 18][3]

Q. Has Ford Credit made any demand upon that auditor in connection with the audits they performed?

Mr. Langley: We're going to object to that question. And I'll instruct the witness not to go into any of those areas. [Doc. 34, App. 20]

Q. Before July 28th of this year, when was the last time you had spoken with Shane Smith?

Mr. Langley: Objection, I'm going to instruct the witness not to answer.

A. I'm going to follow his advice.

Q. Did you and Mr. Smith used to work together at Ford Motor Credit?

Mr. Langley: Objection, Instruct the witness not to answer. [Doc. 34, App. 20]

Q. How of the would you normally have occasion to email Mr. Smith?

Mr. Langley: I'm going to instruct the witness not to answer. [Doc. 34, App. 21]

These excerpts reveal that Reagor and Dykes have not had the opportunity to take discovery related to the Byrd-Smith relationship and/or their communications (other than some testimony related to the July 2018 emergency audit), the June 2018 audit, any "red

---

[3] Ford Credit used the same tactics during the deposition of Rene Leal. Leal was asked, "Well, if 225 vehicles and $9.4 million is substantially the entire inventory of the Floydada lot, its entire capacity, would it be a red flag to Ford that supposedly the entire inventory had been sold in the seven business days before this June 28th, 2018, audit?" Counsel: "Objection to relevance regarding tomorrow's proceedings and direct you not to answer." Leal: "I'm not going to answer." [Doc. 34, App. 87]

flags," or Ford Credit's audit policies. Given the sudden shift from "fantastic results" to alleged massive fraud, Reagor and Dykes should be permitted to depose Ford Credit employees and obtain their relevant documents.[4]

**3.     Reagor and Dykes are entitled to discovery on damages.**

Remarkably, Ford Credit argues that Reagor and Dykes are not entitled to discovery on damages, claiming that the "Dealerships admitted in their bankruptcy schedules" the amounts claimed by Ford Credit. Doc. 36, pp. 13-14. This is simply not true. **Indeed, the Reagor-Dykes Dealerships' Chapter 11 Plan of Reorganization expressly states that "Ford Credit's secured claim is disputed" and that "Ford Credit's unsecured claim is also disputed."** Case No. 18-50214-rlj11, Doc. 795, p. 2.

Ford Credit relies on the declaration of Rene Leal in support of its claim for $112 million. Leal, the Financial Services Manager for the Central Market Area for Ford Credit, gave a limited deposition in August 2018. Leal testified as follows:

Q.     Well, one of the issues that could come up at the hearings that are to be held in this case in the next month or so, including tomorrow, would be the value of your – of Ford Motor Credit's existing collateral, how much is that worth. Do you have any idea what that number is?

A.     No.

Q.     How would you go about calculating it.

---

[4]     In a civil proceeding, the Court can assume a negative inference from Byrd's refusal to testify at his deposition regarding his relationship with Smith. That negative inference alone is sufficient at this time to deny summary judgment pending discovery of evidence that rebuts the negative inference. *See Securities and Exchange Commission v. Sethi Petroleum, LLC*, 229 F.Supp.3d 524, 532 (E.D.Tex. 2017) (stating "[i]n the Fifth Circuit, courts may draw an adverse inference from a defendant's refusal to testify in a civil case. . . This inference is available to the court on summary judgment.") *citing Hinojosa v. Butler,* 547 F.3d 285, 295 (5th Cir. 2008) and *State Farm Life Ins. Co. v. Gutterman*, 896 F.2d 116, 119 (5th Cir. 1990).

Objection; calls for speculation. You can go ahead and answer it if you understand or if you can.

A. I think it would be – I – I don't know. At this point, I couldn't say.
Q. Okay, So as of – as of today, do you know anybody at Ford who knows the valuation of your collateral?

A. No. [Doc. 34, App. 82]

There is no question, and Ford Credit does not dispute, that the value of the collateral (upon which Ford Credit is now seeking to foreclose) will have a significant impact on the damages claimed in this case.[5] Instead, Ford Credit takes the position that Reagor, Dykes, and the Court should just take Leal at his word that the damages are $112 million. That is not justice. Moreover, Leal has not provided any underlying data or calculations (*i.e.*, the value of the collateral or overall claimed debt) to support his damages conclusions. At a minimum, Reagor and Dykes are entitled to depose Leal and obtain the documents he relied upon in making his calculations.

Also, evidence will show that Ford Credit summarily dismissed a proposal made in the bankruptcy cases that provided for a substantial recovery for Ford Credit.

**4. There has been no lack of diligence.**

Ford Credit's criticism of Reagor and Dykes with respect to discovery is unfounded. Ford Credit is keenly aware that Reagor and Dykes have been intimately involved in the bankruptcy proceeding. Stated differently, this is not a situation where a

---

[5] The bankruptcy court recently noted that Paul Boudreau, Gary Byrd's boss at Ford Credit, testified that the vehicle inventory has a value of $60-$70 million and that the Reagor-Dykes dealerships' schedules state that the value is in the $90 million range. Case 18-50214-rlj11, Doc. 865, p. 4.

party has filed a lawsuit, remained idle and seeks last minute relief.[6] Thus, the case relied upon by Ford Credit is clearly distinguishable.[7]

The bankruptcy has also hamstrung Reagor and Dykes from being able to defend themselves in this suit. As stated by Robert Schleizer, the Chief Restructuring Officer to the Reagor-Dykes dealerships in bankruptcy:

> Administering the estate of the Reagor-Dykes dealerships and providing information to Ford Motor Credit have consumed all of the CRO's efforts. The CRO could not have performed its job if it had to provide access to documents and information to Reagor and Dykes. Thus, the CRO, which is in possession and control of all documents of the Reagor-Dykes dealerships, has not permitted Bart Reagor ("Reagor")(or his counsel) or Rick Dykes ("Dykes") or his counsel to inspect the documents of the Reagor-Dykes dealerships.

[Doc. 34, App. 2]

Reagor and Dykes are in the untenable position of having no access to their own information and documents (in part because the CRO is providing documents and information to Ford Credit) and currently do not have documents or deposition testimony from Ford Credit. This is a textbook case of why Rule 56(d) exists—Reagor and Dykes cannot now present facts essential to justify their opposition to Ford Credit's motion. The Court should permit them to take discovery.

### 5. Rank speculation regarding Reagor and Dykes.

Ford Credit's final argument—that Ford Credit may be prejudiced because Reagor

---

[6] Reagor and Dykes are in the process of serving written discovery on Ford Credit and serving deposition subpoenas.

[7] In *Beattie v. Madison County School Dist.*, 254 F.3d 595 (5th Cir. 2001), the plaintiff did not seek relief until sixteen days before the close of discovery. Here, the Court's scheduling order provides that discovery ends on January 13, 2020—almost a full year from now.

and Dykes may dissipate assets that could be used to satisfy a judgment—belies Ford Credit's actions in the bankruptcy proceeding and rests on rank speculation. For example, Reagor and Dykes loaned the debtor companies money via a debtor-in-possession loan order that was approved with no objection by Ford Credit. Moreover, Reagor has had hundreds of thousands of dollars seized by the United States government. There is no evidence whatsoever that Reagor and Dykes have liquidated or dissipated any assets to avoid any potential judgments. To the contrary, they have used personal funds in an effort to assist their companies in bankruptcy. Ford Credit has not shown that it would be prejudiced by deferring consideration of the motion and permitting Reagor and Dykes to take discovery.

**6.   Conclusion.**

The decision whether to grant a Rule 56(d) motion lies within the sound discretion of the Court. The situation before the Court is unusual due to the parallel bankruptcy proceeding, which has consumed the efforts of the CRO, the dealerships and their employees, and both Reagor and Dykes. Stated differently, this is not a situation where the parties seeking relief have been dilatory. The reality is that the energy has been channeled to the bankruptcy proceeding, the outcome of which will significantly impact the result in this case. Thus, Reagor and Dykes respectfully request the Court to defer consideration of Ford Credit's motion for summary and allow them to take discovery so that they can defend themselves and oppose Ford Credit's motion.

**WHEREFORE, PREMISES CONSIDERED**, Defendants Bart Reagor and Rick Dykes respectfully pray that this Honorable Court grant their Motion to Defer Consideration of Plaintiff's Motion for Summary Judgment and to Take Discovery, and for such other relief, at law and in equity, to which they may show themselves justly entitled.

Respectfully submitted,

 */s/ Marshall M. Searcy, Jr.*
Marshall M. Searcy, Jr.
State Bar No. 17955500
marshall.searcy@kellyhart.com
Scott R. Wiehle
State Bar No. 24043991
scott.wiehle@kellyhart.com
KELLY HART & HALLMAN, LLP
201 Main Street, Suite 2500
Fort Worth, Texas  76102
Telephone:  (817) 332-2500
Telecopy:  (817) 878-9280

**ATTORNEYS FOR BART REAGOR**

 */s/ Tom Kirkendall*
Tom Kirkendall
State Bar No. 11517300
Law Office of Tom Kirkendall
2 Violetta Court
The Woodlands, Texas 77381-4550
Telephone: (281) 364-9946
Telecopy:  (888) 582-0646
bigtkirk@kir.com

**ATTORNEY FOR RICK DYKES**

## **CERTIFICATE OF SERVICE**

      I certify that a true and correct copy of the foregoing to be delivered to the following parties in accordance with the Federal Rules of Civil Procedure on February 6, 2019.

Keith A. Langley
Brandon K. Bains
Langley LLP
1301 Solana Blvd
Bldg 1, Ste 1545
Westlake, TX 76262
Email: klangley@l-llp.com
Email: bbains@l-llp.com

Craig A Leslie
Joanna Dickinson
Phillips Lytle LLP
One Canalside
125 Main Street
Buffalo, NY 14203
Email: cleslie@phillipslytle.com
Email: jdickinson@phillipslytle.com

Michael S. Goldberg
Baker Botts LLP
One Shell Plaza
910 Louisiana Street
Houston, Texas 77002
Email: michael.goldberg@bakerbotts.com

Jessica B. Pulliam
Baker Botts LLP
2001 Ross Avenue, Suite 900
Dallas, Texas 75201
Email: jessica.pulliam@bakerbotts.com

      */s/ Marshall M. Searcy, Jr.*
      Marshall M. Searcy, Jr.