**IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
LUBBOCK DIVISION**

| | | |
|---|---|---|
| **FORD MOTOR CREDIT COMPANY LLC,** | § | |
| **Plaintiff,** | § | |
| | § | |
| | § | |
| **v.** | § | **Civil Action No.: 5:18-cv-00186** |
| | § | |
| **BART REAGOR AND RICK DYKES,** | § | |
| **Defendants.** | § | |

**<u>DEFENDANTS' RESPONSE AND BRIEF IN OPPOSITION
TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT</u>**

Marshall M. Searcy, Jr.
marshall.searcy@kellyhart.com
Scott R. Wiehle
scott.wiehle@kellyhart.com
KELLY HART & HALLMAN, LLP
201 Main Street, Suite 2500
Fort Worth, Texas  76102
Telephone:  (817) 332-2500
Telecopy:  (817) 878-9280

**ATTORNEYS FOR BART REAGOR**


Tom Kirkendall
bigtkirk@kir.com
Law Office of Tom Kirkendall
2 Violetta Court
The Woodlands, Texas 77381-4550
Telephone: (281) 364-9946
Telecopy:  (888) 582-0646

**ATTORNEY FOR RICK DYKES**

## TABLE OF CONTENTS

**Page**

I.    Preliminary Statement.................................................................................................1

II.   Argument and Authorities.........................................................................................1

     A.    Legal Standard ...............................................................................................1

     B.    FMCC fails to submit competent summary judgment regarding alleged defaults. .......................................................................................................2

          1.    Rene Leal has no personal knowledge of matters addressed in paragraphs 31-46 of his declaration. .................................................. 4

          2.    The legal conclusions in paragraphs 42, 43 and 46 of Leal's declaration are not competent summary judgment evidence..................................................... 8

     C.    There is a fact issue as to whether the Reagor and Dykes guarantees should be discharged. ......................................................................................9

     D.    There is a fact issue on the alleged amount owed.....................................15

          1.    Rene Leal's declaration is substantively flawed on damages. ....................... 15

          2.    The damages are disputed. ............................................................. 19

          3.    FMCC's damages will be reduced soon. ........................................ 21

          4.    The case law upon which FMCC relies is distinguishable. ............................ 22

     E.    The Court should defer consideration at this time. ...................................23

# TABLE OF AUTHORITIES

**Page(s)**

**Federal Cases**

*Allred v. Irvine–Hedrick (In re Irvine–Hedrick )*,
    Adv. No. 12–5006, 2012 WL 5728625 (Bankr, D.S.D. Nov. 15, 2012) ................................20

*Anderson v. Liberty Lobby, Inc.*,
    477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)............................................................2

*Bolen v. Dengel*,
    340 F.3d 300 (5th Cir. 2003) ...................................................................................................5

*Burton v. Banta Global Turnkey Ltd.*,
    170 Fed. Appx. 918 (5th Cir. 2006)..........................................................................................5

*Celotex Corp. v. Catrett*,
    477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)............................................................2

*Coke v. General Adjustments Bureau*,
    640 F.2d 584 (5th Cir. 1981) (en banc) ...................................................................................2

*Cont'l Illinois Nat. Bank & Tr. Co. of Chicago v. Windham*,
    668 F.Supp. 578 (E.D. Tex. 1987)....................................................................................22, 23

*Cormier v. Pennzoil Exploration & Prod. Co.*,
    969 F.2d 1559 (5th Cir. 1992) .................................................................................................5

*FDIC v. Cardinal Oil Well Servicing Co. .*,
    837 F.2d 1369 (5th Cir. 1988) ...............................................................................................16

*FDIC v. Selaiden Builders, Inc.*,
    973 F.2d 1249 (5th Cir. 1992) ...............................................................................................16

*Federal Deposit Ins. Corp. v. Woolard*,
    889 F.2d 1477 (5th Cir. 1989) ...............................................................................................11

*Galindo v. Precision Am. Corp.*,
    754 F.2d 1212 (5th Cir. 1985) .................................................................................................8

*Garcia Estrada v. Dretke*,
    C.A. No. C-04-687, 2007 WL 999514 (S.D. Tex. March 29, 2007) ........................................3

*Gazda v. Pioneer Chlor Alkali Co.*,
    10 F.Supp.2d 656 (S.D. Tex. 1997) ........................................................................................3

## TABLE OF AUTHORITIES CONT.

**Page(s)**

**Federal Cases**

*Gibson v. Liberty Mut. Group*,
   129 Fed. Appx. 94 (5th Cir. 2005)............................................................................5

*Hanchey v. Energas Co.*,
   925 F.2d 96 (5th Cir. 1990) ....................................................................................8

*Investor Collection Services Ltd. Partnership v. Thomas*,
   1998 WL 355469 (N.D. Tex. June 26, 1998) ......................................................16, 17, 19, 21

*Johnson v. Pointe Coupee Parish Police Jury*,
   261 Fed. App'x 668 (5th Cir. 2008) (unpublished) ..................................................8

*Leslie v. Leslie*,
   181 B.R. 317 (Bankr. N.D. Ohio 1995)..................................................................20

*Lodge Hall Music, Inc. v. Waco Wrangler Club, Inc.*,
   831 F.2d 77 (5th Cir. 1987) ....................................................................................5

*Meecorp Capital Markets LLC v. Tex-Wave Industries LP*,
   265 Fed.Appx. 155 (5th Cir. 2008)...................................................................19, 21

*Presta v. Charles Schwab Bank, N.A. (In re Presta)*,
   3:13-AP-128, 2014 WL 2448444 (Bankr. M.D. Fla. May 28, 2014) ....................20

*Redus TX Properties, LLC v. Gray*,
   2012 WL 1327787 (S.D. Tex. 2012) ..............................................................23, 24

*Resolution Trust Corp. v. Crow*,
   763 F.Supp. 887 (N.D. Tex. 1991) .......................................................................16

*Resolution Trust Corp. v. Northpark Joint Venture*,
   958 F.2d 1313 (5th Cir. 1992) ...............................................................................11

*Stark Master Fund, Ltd. v. Ausmus*,
   2010 WL 11618653 (N.D. Tex. 2010).............................................................23, 24

*Thomas v. Atmos Energy Corp.*,
   223 Fed. Appx. 369 (5th Cir. 2007).......................................................................5

*Thornbrough v. Columbus & Greenville R.R. Co.*,
   760 F.2d 633 (5th Cir. 1985) ..................................................................................1

## <u>TABLE OF AUTHORITIES CONT.</u>

**Page(s)**

**Federal Cases**

*Topalian v. Ehrman*,
   954 F.2d 1125 (5th Cir. 1992), cert. denied, 506 U.S. 825, 113 S.Ct. 82, 121
   L.Ed.2d 46 (1992)..................................................................................................8

*Tucker v. SAS Institute*,
   462 F. Supp.2d 715 (N.D. Tex. 2006) ...................................................................3

*U.S. v. Vahlco Corp.*,
   800 F.2d 462 (5th Cir. 1986) ...............................................................................10

*Williamson v. U.S. Dept. of Agriculture*,
   815 F.2d 368 (5th Cir. 1987) .................................................................................3

**State Cases**

*Austin Hardwoods Inc. v. Vanden Berghe*,
   917 S.W.2d 320 (Tex. App.-El Paso 1995, writ denied) .......................................10

*Beal Bank, SSB v. Biggers*,
   227 S.W.3d 187 (Tex.App.—Houston [1st Dist.] 2007, no pet.) ...........................10

*Byboth v. Wood Ltd. P'ship*,
   No. 05-08-00915-CV, 2009 WL 1416768 (Tex. App.-Dallas May 21, 2009,
   pet. denied) (mem. op.) ........................................................................................10

*Fed. Deposit Ins. Corp. v. Attayi*,
   745 S.W.2d 939 (Tex. App.-Houston [1st Dist.] 1988, no writ) ...........................10

*FFP Marketing Co., Inc. v. Long Lane Master Trust IV*,
   169 S.W.3d 402 (Tex.App.—Fort Worth 2005, no pet.)........................................18

*Guerra v. M.H. Equities, Ltd.*,
   2012 WL 2135596 (Tex.App.—Fort Worth 2012).................................................17

*McKnight v. Va. Mirror Co.*,
   463 S.W.2d 428 (Tex. 1971)..................................................................................10

*Towncreek Industrial, LLC v. Wells Fargo Bank*,
   2016 WL 6305257 (Tex. App. Fort Worth 2016, no pet.)......................................23

*United Concrete Pipe Corp. v. Spin-Line Co.*,
   430 S.W.2d 360 (Tex. 1968)..................................................................................10

**<u>TABLE OF AUTHORITIES CONT.</u>**

**Page(s)**

**State Cases**

*Vastine v. Bank of Dallas*,
    808 S.W.2d 463 (Tex. 1991) (per curiam)..............................................................................10

**Federal Rules**

Fed. R. Evid. 602 ...........................................................................................................................4

Federal Rule of Bankruptcy Procedure 1009................................................................................20

Federal Rule of Civil Procedure 56(e) ...............................................................................3, 4, 8, 9

Federal Rules of Civil Procedure Rule 56(c) .................................................................................1

Federal Rules of Evidence Rule 801(c) .......................................................................................20

Defendants Bart Reagor ("Reagor") and Rick Dykes ("Dykes") file this Response in Opposition to Plaintiff's Motion for Summary Judgment (the "Motion").

## I.
## PRELIMINARY STATEMENT

Federal Courts often refer to suits on promissory notes as "fit grist for the summary judgment mill." This, however, is not such a case despite Ford Motor Credit Company's ("FMCC") efforts to convince the Court otherwise. The agreements at issue do not contain principal amounts or interest rates to establish any amounts owed. FMCC instead resorts to relying on the declaration of an employee who (1) makes many significant statements that are not based upon his personal knowledge, and (2) provides no explanation, calculations or supporting documents for his damages figures. FMCC's Motion should be denied for those reasons alone. The Court should also deny FMCC's Motion because Reagor and Dykes have presented competent summary judgment evidence showing that there is a genuine issue of material fact on liability with respect to out of trust sales and damages.

## II.
## ARGUMENT AND AUTHORITIES

### A.    Legal Standard

Rule 56(c) of the Federal Rules of Civil Procedure allows summary judgment only where there is no genuine issue as to any material fact and the moving party is entitled to summary judgment as a matter of law. FED. R. CIV. P. 56(c). All reasonable doubts and inferences must be decided in the light most favorable to the party opposing the motion. *Thornbrough v. Columbus & Greenville R.R. Co.*, 760 F.2d 633, 640 (5th Cir. 1985).

Indeed, as long as there appears to be some evidentiary support for the disputed allegations, the motion must be denied. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248–49, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Coke v. General Adjustments Bureau*, 640 F.2d 584, 595 (5th Cir. 1981) (en banc).

The party moving for summary judgment bears the initial burden of identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Where the nonmoving party bears the burden of proof on a claim upon which summary judgment is sought, the moving party may discharge its summary judgment burden by showing that there is an absence of evidence to support the nonmoving party's case. *Id.* at 325. Once the moving party satisfies this burden, the nonmoving party may then oppose the motion by going beyond the pleadings and by its own affidavits or by depositions, answers to interrogatories, and admissions on file to designate specific facts showing a genuine issue for trial. *Id.* at 324; *Anderson*, 477 U.S. at 256.

## B.    FMCC fails to submit competent summary judgment regarding alleged defaults.

FMCC has not properly proven all elements of its case.  Namely, FMCC fails to establish competent summary judgment evidence regarding liability because it relies solely on an inadmissible affidavit to show the occurrence of conditions upon which

liability is based.  Federal Rule of Civil Procedure 56(e) prescribes the nature of evidence

that may be submitted for consideration on a motion for summary judgment as follows:

> Supporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matter stated therein.  Sworn or certified copies of all papers or parts thereof referred to in the affidavit shall be attached thereto and served therewith. The court may permit affidavits to be supplemented or opposed by depositions, answers to interrogatories or further affidavits.

Fed. R. Civ. P. 56(e).

By the plain language of the Rule, a court cannot consider affidavits that are not

made upon the personal knowledge of an affiant competent to testify to the matters stated

and setting forth facts that would be admissible in evidence at trial.  *Garcia Estrada v.*

*Dretke*, C.A. No. C-04-687, 2007 WL 999514 *5 (S.D. Tex. March 29, 2007).  Affidavits

based on hearsay are improper summary judgment evidence, as are those based on

conclusory statements or unsubstantiated assertions.  *Id.*; *see also Tucker v. SAS Institute*,

462 F. Supp.2d 715, 721 (N.D. Tex. 2006) (stating "neither conclusory allegations nor

unsubstantiated assertions will satisfy the nonmovant's summary judgment burden");

*Gazda v. Pioneer Chlor Alkali Co.*, 10 F.Supp.2d 656, 668 (S.D. Tex. 1997) (affirming

that "a plaintiff may not rely on merely conclusory assertions of personal opinion in

affidavit to defeat summary judgment").  Those portions of affidavits that do not comply

with these requirements are entitled to no weight. *Williamson v. U.S. Dept. of*

*Agriculture*, 815 F.2d 368 (5th Cir. 1987).

**1.    Rene Leal has no personal knowledge of matters addressed in paragraphs 31-46 of his declaration.**

To establish liability, FMCC relies on the declaration of Rene Leal, who is the Financial Services Manager for the Central Market Area for FMCC.  Leal claims that his declaration is based on his "review of certain records of Ford Credit, [his] dealings with the Reagor-Dykes Dealerships, and [his] involvement with the effort to address the status situation resulting from the defaults by the Reagor-Dykes Dealerships described further below."  (FMCC App. 2, ¶ 3).  Leal's assertion that his declaration is based upon his personal knowledge and involvement, however, is simply unfounded.  The evidence, in the form of his own deposition testimony,[1] clearly shows that he was not personally involved in the handling of the alleged fraud at issue, but rather acquired his knowledge after the fact, based on the statements of others.

The Federal Rules make clear that for the purpose of summary judgment motions "[s]upporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matter stated therein." Fed. R. Civ. P. 56(e). Similarly, the rules of evidence prohibit a witness from testifying "unless evidence is introduced sufficient to support a finding that the witness has personal knowledge of the

---

[1]    Leal and several other Ford Credit employees gave limited deposition testimony in August 2018 prior to a hearing in the bankruptcy court.  FMCC's attorneys instructed the witnesses on numerous occasions to not answer questions based on relevance to the bankruptcy hearing.  The depositions were conducted by the Reagor-Dykes Auto Group's bankruptcy counsel at the time.  Counsel for Reagor and Dykes were not entitled to ask any questions because Reagor and Dykes are not parties to the bankruptcy case.  Leal's limited deposition is in the appendix.  (RD App. 0071-98).

matter." Fed. R. Evid. 602.

In line with this authority, the Fifth Circuit has repeatedly held that affidavit testimony which is based on inadmissible hearsay is not competent summary judgment evidence. *See Thomas v. Atmos Energy Corp*., 223 Fed. Appx. 369, 373 (5th Cir. 2007) (rejecting argument that affidavits containing hearsay are proper summary judgment evidence); *Burton v. Banta Global Turnkey Ltd*., 170 Fed. Appx. 918, 923 (5th Cir. 2006) (district court cannot consider inadmissible evidence contained in affidavits); *Gibson v. Liberty Mut. Group*, 129 Fed. Appx. 94, 95 (5th Cir. 2005) (affidavit reciting affiant "learned" information contained therein properly stricken as containing legal conclusions and hearsay not based upon affiant's personal knowledge); *Bolen v. Dengel*, 340 F.3d 300, 313 (5th Cir. 2003) (affidavit based on information and belief not based on personal knowledge and fails requirements of summary judgment evidence); *Lodge Hall Music, Inc. v. Waco Wrangler Club, Inc*., 831 F.2d 77, 80 (5th Cir. 1987) (factual assertions not based on personal knowledge do not qualify as competent summary judgment evidence capable of controverting properly supported facts); *Cormier v. Pennzoil Exploration & Prod. Co*., 969 F.2d 1559, 1561 (5th Cir. 1992) (hearsay testimony contained in affidavits inadmissible and may not be considered).

While Leal claims to have personal knowledge based on his "dealings with the Reagor-Dykes Dealerships," (FMCC App. 2, ¶ 3) he testified that he had absolutely no interaction or communication with the Reagor-Dykes Auto Group prior to 2018. (RD App. 74, at 13:21-14:1). In fact, Leal has never had any interaction or communication with Rick Dykes and has only met Bart Reagor on one occasion:

> Q.   Well, did you ever talk to Mr. Reagor or Mr. Dykes?
>
> A.   I met Mr. Reagor, I believe, a few years ago at a dealer grassroots-type   meeting in Dallas.
>
> Q.   Other than that, any other conversations?
>
> A.   No. No.
>
> Q.   Any communications with Rick Dykes?
>
> A.   Never met him.

(RD App. 76,  at 23:16-23).

Additionally, paragraphs 31-41 of Leal's declaration go into great detail about FMCC's investigation of the June 2018 audit, and FMCC's analysis of the July 2018 emergency audit results.  (FMCC App. 7, ¶ 31) ("Ford Credit undertook an analysis of both the audit results and sales and registration data form the Texas DMV and other publicly available sources."); (*see id*. at ¶ 33) ("Ford Credit determined that the sales dates reported by the dealerships for one hundred forty-seven (147) of these vehicles did not match the sales and registration dates reported by the Texas DMV and other publicly-available sources."); (*id*. at ¶ 41) ("On July 26 and 27, 2018 a further audit of the vehicle inventory at the various Reagor-Dykes Dealerships' locations revealed that each dealership was out of trust, having sold vehicles that were subject to Ford Credit's security interests without remitting proceeds from those sales to Ford Credit.").  Leal, however, testified that he was not involved in either audit analysis:

> Q.   All right. Do you recall any involvement of Black Belt in deciding to perform the audit on the 26th and 27th of July?

> A.  I wasn't involved with the process, so I -- if you can maybe re-clarify that.

(RD App. 75, at 18:19-23).

Indeed, Leal testified that James Conlan undertook the analysis of the Reagor-Dykes dealerships, and Leal "do[esn't] know specifically what they looked at" because he "wasn't there."  (RD App. 76, at 24:18-22).  As such, Leal's familiarity with Ford Credit's audits of the Reagor-Dykes dealerships is premised entirely on hearsay reports from James Conlan.  (RD App. 75, at 20:11-20).  Leal did not deal directly with anyone at the Reagor-Dykes dealerships regarding the audits.

> A.  So as the audit began, typically the – the AiM folks who complete the audits would – were providing sales dates and copies of documents.  Those were then sent to Jim Conlan, who was in the background running DMV's to verify if those dates were accurate based on the DMV and the other sources that he has.
>
> Q.  Okay. And who were you dealing with at Reagor-Dykes?
>
> A.  I wasn't dealing with anyone.
>
> Q.  Okay. Was -- was Mr. Byrd dealing with Reagor-Dykes?
>
> A.  Mr. Byrd was.
>
> Q.  And who was he dealing with?
>
> A.  I believe he was -- excuse me. My understanding is, is that he was meeting with the CFO.

(RD App. 76, at 22:13-21).

Because Leal lacks personal knowledge regarding "The Reagor-Dykes Dealerships' Defaults" as outlined in ¶¶ 31-46, his declaration is improper summary judgment evidence.

2.     **The legal conclusions in paragraphs 42, 43 and 46 of Leal's declaration are not competent summary judgment evidence.**

Conclusory statements "are not capable of sustaining ... [Plaintiff's] burden on summary judgment." *Johnson v. Pointe Coupee Parish Police Jury*, 261 Fed. App'x 668, 671 (5th Cir. 2008) (unpublished).  "[U]nsupported allegations or affidavits setting forth ultimate or conclusory facts and conclusions of law are insufficient to either support or defeat a motion for summary judgment."  *Galindo v. Precision Am. Corp.*, 754 F.2d 1212, 1216 (5th Cir. 1985) (internal quotation omitted); *see also Topalian v. Ehrman*, 954 F.2d 1125, 1131 (5th Cir. 1992), cert. denied, 506 U.S. 825, 113 S.Ct. 82, 121 L.Ed.2d 46 (1992) ("Mere conclusory allegations are not competent summary judgment evidence, and they are therefore insufficient to defeat or support a motion for summary judgment."); *Hanchey v. Energas Co.*, 925 F.2d 96, 97 (5th Cir. 1990) ("Legal conclusions and general allegations do not satisfy this burden.").  Such evidence cannot be considered on summary judgment under Federal Rule of Civil Procedure 56(e).

Leal's legal conclusions regarding the Reagor-Dykes Auto Group's alleged defaults are not competent summary judgment evidence.  (FMCC App. 8, ¶ 42) ("Selling vehicles out of trust was a violation of the Reagor-Dykes Dealerships' agreements with Ford Credit, and constituted a default under the agreements."); (FMCC App. 9, ¶ 43) ("Double-flooring vehicles, reporting inaccurate or false sales dates, and flooring vehicles after they were sold also constituted defaults under those agreement."); (FMCC App. 8-9; ¶ 46) ("The Failure to make payments to Ford Credit as and when due was a further default under the Reagor-Dykes' Dealership's agreements with Ford Credit.  The filing of

voluntary bankruptcy petitions by the Reagor-Dykes Dealerships is also a default under those agreements.").  FMCC improperly attempts to establish what constitutes a default under the agreements between it and Reagor-Dykes Auto Group through the definitive statements of its employee.  This defective evidence fails to satisfy its burden under the requirements of Federal Rule of Civil Procedure 56(e).  Therefore, FMCC's Motion should be denied as to liability.

## C.   There is a fact issue as to whether the Reagor and Dykes guarantees should be discharged.

Reagor and Dykes attach hereto an affidavit from Timothy Conner ("Conner"), a certified public accountant who is currently the controller of the Reagor-Dykes Auto Group, who testifies that FMCC knew or should have known of the out of trust sales by the Reagor-Dykes Auto Group.[2]  (RD App. 99-102)  This evidence is significant because out of trust sales are unsecured debt,[3] and FMCC's knowledge and implicit acquiescence to those sales are an unauthorized modification of the loan agreements that cannot be enforced through the guaranty.

Texas law is well settled that a guarantor is discharged by a material alteration of the underlying contract that lacks the consent of the guarantor and harms the guarantor. *Beal Bank, SSB v. Biggers*, 227 S.W.3d 187, 192 (Tex.App.—Houston [1st Dist.] 2007, no pet.); *Austin Hardwoods Inc. v. Vanden Berghe*, 917 S.W.2d 320, 325 (Tex. App.-El

---

[2]     Selling out of trust is a phrase commonly used in the automobile industry to refer to the sale of a car that has been paid for with a loan and then not using the sale proceeds to pay back the lender.

[3]     When the debtor sells the car out of trust and does not repay the loan, the creditor/bank cannot seize the loan collateral (the car), which makes the debt unsecured.

Paso 1995, writ denied); *see also McKnight v. Va. Mirror Co.*, 463 S.W.2d 428, 430 (Tex. 1971).  A material alteration is an alteration of the underlying contract between a creditor and principal debtor that either injures or enhances the risk of injury to the guarantor.  *United Concrete Pipe Corp. v. Spin-Line Co.*, 430 S.W.2d 360, 365-66 (Tex. 1968); *Fed. Deposit Ins. Corp. v. Attayi,* 745 S.W.2d 939, 944 (Tex. App.-Houston [1st Dist.] 1988, no writ).  "If the creditor and the principal debtor vary in any degree the terms of the contract, then a new contract has been formed, upon which new contract the [guarantor] is not obligated and cannot, therefore, be bound."  *U.S. v. Vahlco Corp.*, 800 F.2d 462, 465 (5th Cir. 1986).  "The assumption underlying this rule is that the guarantor has carefully assessed the risk to which he will be exposed by undertaking the guaranty. If the terms of the guaranteed indebtedness are changed, the risks to the guarantor change as well, and it would be unfair to require the guarantor to assume risks other than those he chose to assume."  *Id.*

To be entitled to discharge from liability on the guaranty, the guarantor must prove (1) a material alteration of the underlying contract; (2) made without the guarantor's consent; (3) which is to the guarantor's detriment. *Vastine v. Bank of Dallas*, 808 S.W.2d 463, 464-65 (Tex. 1991) (per curiam); *Byboth v. Wood Ltd. P'ship*, No. 05-08-00915-CV, 2009 WL 1416768, at *2 (Tex. App.-Dallas May 21, 2009, pet. denied) (mem. op.). Further, "the primary concern of the reviewing court is to ascertain the intent of the parties." *Resolution Trust Corp. v. Northpark Joint Venture*, 958 F.2d 1313, 1320 (5th Cir. 1992). "If the guaranty is ambiguous, then the court must apply the 'construction which is most favorable to the guarantor.' " *Id.* (quoting *Coker v. Coker*, 650 S.W.2d 391,

394 n. 1 (Tex. 1983)).   "The starting point for analyzing the rights and duties of the parties to a guaranty should be the language of the instrument itself." *Federal Deposit Ins. Corp. v. Woolard*, 889 F.2d 1477, 1480 (5th Cir. 1989).

Here, the underlying agreements at issue are entitled "Ford Credit Automotive Wholesale Plan Application for Wholesale Financing and Security Agreement." (FMCC App. 14, 29, 39, 112, 125 ,135).   The primary purpose of the agreements is to give FMCC a secured interest in the vehicles (and other property owned by the debtor dealerships) financed by the debtor dealerships. (FMCC App. 15, 30, 40, 113, 126, 136).   As Conner states, FMCC provided comprehensive automobile inventory financing ("floor plan financing") for six of the Reagor-Dykes Auto Group dealerships, and FMCC's financing is secured by a blanket lien on most of the assets of those six dealerships, as well as a lien on certain other Reagor-Dykes Auto Group assets. (RD App. 99, ¶ 2).   There is no discussion of unsecured debt in these agreements, meaning Reagor and Dykes never agreed to guarantee unsecured debt incurred by the debtor dealerships.

A key monitoring aspect of FMCC's floor-plan financing with the Reagor-Dykes Auto Group is FMCC's right to conduct quarterly on-site audits of Reagor-Dykes financial records.[4]   (RD App. 100, ¶ 4).   Those audits are important because it allows

---

[4]   As testified to by Dykes, Shane Smith ("Smith") was the CFO of the Reagor-Dykes Auto Group for the past 11 years until August 1, 2018. (RD App. 107, ¶ 4).   Smith coordinated and managed all financing arrangements for the Reagor-Dykes Auto Group, including the FMCC floor-plan financing. (*Id.*).   Both Reagor and Dykes relied on and trusted Smith to manage all material financial transactions of the Reagor-Dykes Auto Group and to provide accurate information regarding those transactions. (*Id.*).   Prior to becoming CFO of the Reagor-Dykes Auto Group, Smith was an employee of FMCC. (RD App. 107, ¶ 5).   Over the past 11 years while at Reagor-Dykes Auto Group, Smith maintained a close professional and personal relationship with Gary Byrd, Jr. ("Byrd"), the Dallas Regional Manager of FMCC and the person

FMCC to verify the accuracy of Reagor-Dykes Auto Group's financial transactions and reporting. (*Id.*).  At the conclusion of each such audit, FMCC would advise of any problems that arose in the audit and the amount of the short-term indebtedness (*i.e.*, debt payable to FMCC within roughly the following week) that Reagor-Dykes Auto Group owed to FMCC relating to sales of inventory. (RD App. 100, ¶ 6).  For example, at the conclusion of FMCC's most recent quarterly audit, in June 2018, FMCC cited no problems with the audit, complimented Reagor-Dykes Auto Group personnel in cooperating with the audit, and confirmed the outstanding amount of indebtedness owed to FMCC from inventory sales was approximately $25 million. (RD App. 100, ¶ 6 and 107, ¶ 7).

In late July 2018, less than a month after the quarterly June 2018 audit, FMCC notified Smith that it was undertaking an emergency on-site review of the Reagor-Dykes Auto Group's financial records.  (RD App. 107-08, ¶ 8).  FMCC did not notify Reagor or Dykers of the emergency audit.   (*Id.*).  FMCC declared defaults under its floor-plan financing agreements with the Reagor-Dykes Auto Group and terminated providing any further financing under those agreements.  (RD App. 109, ¶ 13).  FMCC's employee Byrd, Smith's friend and colleague, was on site at the downtown office of the Reagor-Dykes Auto Group.  (RD App. 108, ¶ 10).  On Saturday, July 28, 2018, Byrd told Dykes "Y'all have some big problems," and told Dykes for the first time that the Reagor-Dykes

---

primary responsible for overseeing FMCC's floor-plan financing of the Reagor-Dykes Auto Group.  (*Id.*).  Byrd knew that Smight was responsible for managing the financial transactions between Reagor-Dykes Auto Group and FMCC and for reporting Reagor-Dykes Auto Group's financial information to FMCC.  (*Id.*).

Auto Group had failed to remit to FMCC a substantial amount of inventory sales proceeds attributable to FMCC's floor-plan financing, *i.e.*, the out of trust sales. (RD App. 108, ¶ 11). Later that morning, Byrd told Dykes that one of the "red flags" that alerted FMCC that there were problems with the reported sale of Reagor-Dykes inventory was that Reagor-Dykes Auto Group was "loading" (*i.e.*, reporting) a disproportionately large number of inventory sales in the week immediately preceding each FMCC quarterly audit. (RD App. 108, ¶ 12). Dykes was surprised and asked Byrd:

**"How long has this (i.e., the reporting of disproportionately large inventory sales) going on?"**

Byrd replied: **"For quite a while."**

Dykes asked: **"Why weren't Bart (Reagor) and I notified about this?"**

Byrd looked at Dykes with a blank expression and did not immediately respond. After a pause, Byrd replied, **"Well, I did tell Shane (Smith)."**[5]  (RD App. 108-09, ¶ 12).

Shortly thereafter terminating the financing, FMCC publicly announced that the reason for its termination of its floor-plan financing agreements was that the Reagor-Dykes Auto Group had defrauded FMCC by selling over 1,100 vehicles and not remitting to FMCC over $40 million in sales proceeds attributed to those vehicles as required under the floor-plan agreements (the "out of trust sales"). (RD App. 100, ¶ 8).

---

[5]     Shane Smith was deposed on August 13, 2018, in relation to the bankruptcy proceeding. Smith refused to answer any questions relating to the FMCC audits or his relationship with Byrd, and invoked his Fifth Amendment privilege against self-incrimination. (RD App. 109, ¶ 15). Two days later, Byrd was deposed in connection with the bankruptcy case. Byrd refused to answer questions relating to the FMCC audits or his relationship with Smith. (RD App. 109, ¶ 16).

After August 1, 2018, prompted by the unusual circumstances of the June and July 2018 audits, Conner undertook a review of each FMCC quarterly audit from the final audit of 2016 through the June 2018 audit.  (RD App. 101, ¶ 9-10).  Conner concluded that FMCC representatives involved in the quarterly audits knew or should have known that the Reagor-Dykes Auto Group regularly owed millions of dollars in out of trust sales to FMCC in excess of the short term indebtedness of Reagor-Dykes Auto Group confirmed at the conclusion of each such audit.  (RD App. 101, ¶11).

Conner determined that the value of the inventory that FMCC audits reported being sold from certain Reagor-Dykes dealerships was a clear signal that FMCC representatives were either ignoring or allowing out of trust sales.  (RD App. 101, ¶12). Conner cites an example as to why FMCC knew or should have known about the out of trust sales.  At the conclusion of the June 2018 audit, FMCC confirmed that Reagor-Dykes Floydada owed FMCC approximately $9.4 million from inventory sales payable within the following week.  (RD App. 101, ¶ 12).  At that time, the average value of the entire inventory of vehicles at that dealership was between $9-10 million.  (*Id.*).  Conner confirms that no reasonable interpretation of the data from that audit would conclude that it was possible that the dealership could have sold vehicles roughly equal to the entire floor-plan inventory of the dealership in a time frame where the amounts due FMCC were due within the following week.  (*Id.*).  The Reagor-Dykes Floydada situation is but one example of similar issues that Conner discovered in reviewing the quarterly audits. (RD App. 101, ¶ 13).

The Conner and Dykes affidavits are evidence that FMCC knew or should have known of the out of trust sales by the Reagor-Dykes Auto Group. FMCC permitted large amounts of out of trust sales to occur over a long period of time and, through multiple audits, FMCC effectively altered the financing agreements to implicitly authorize such sales and create the unsecured obligations. Stated differently, there were "red flags" everywhere to which FMCC acquiesced.

By acquiescing to these out of trust sales that turned secured debt into unsecured debt, FMCC materially altered the terms of the underlying contracts without obtaining the consent of Reagor and Dykes (and to Reagor and Dykes' detriment). Stated differently, Reagor and Dykes never consented to guarantee unsecured debt created by the actions of the debtor dealerships and FMCC. (RD App. 110, ¶ 19). Thus, Reagor and Dykes should be discharged of the guarantees, at least with respect to the out of the trust sales (which FMCC claims is $41 million). At a minimum, there are ambiguities in the underlying agreements and guaranty agreements with respect to unsecured debt that preclude summary judgment, at least with regards to the out of trust sales.

**D.      There is a fact issue on the alleged amount owed.**

The Court should also deny FMCC's Motion with respect to damages, because (1) FMCC has not properly proved its damages, and (2) there is a genuine fact issue on damages.

**1.      Rene Leal's declaration is substantively flawed on damages.**

FMCC relies exclusively on the declaration of Leal to support its damages claim. (FMCC App. 2-12). Leal's declaration is substantively flawed, precluding summary

judgment.  The flaws are as follows:

(1)    Leal's declaration contains no statement that FMCC actually advanced the funds that it seeks to recover in this lawsuit (and FMCC's Appendix contains no other competent, admissible evidence, testimony or documents, that FMCC provided the money it seeks to recover).  Stated differently, there is no evidence before the Court that FMCC provided the money to the Reagor-Dykes dealerships that it seeks to recover from Reagor and Dykes under the guaranties at issue.   Absent such evidence, summary judgment is improper.[6]

(2)    Leal's declaration also contains no statement as to how he calculated his damages figures, which precludes summary judgment.  For example, in *PNC Bank v. BHMDF, Ltd.*, a suit to recover on defaulted promissory notes and guaranty agreements, Chief Judge Lynn denied summary judgment because the creditor did not sufficiently explain how the amounts were calculated.  2016 WL 5942226 at *3 (N. D. Tex. 2016). To prove damages, the plaintiff bank submitted an affidavit from a bank vice-president wherein he swore to the amounts due under the terms of the guaranty contracts that had not been paid by the guarantor defendants.  *Id.*  The Court noted that the affidavit, which separated the amounts owed into principal, interest, late fees, and miscellaneous fees, "does not sufficiently explain how the amounts were calculated.  PNC does not provide

---

[6]    The agreements at issue are different from the typical guaranteed promissory notes that contain principal amounts, interest percentages, and due dates.  Thus, this is not the typical suit that provides "fit grist for the summary judgment mill" as often referred to by Federal courts. *See Investor Collection Services Ltd. Partnership v. Thomas*, 1998 WL 355469 at *5 (N.D. Tex. June 26, 1998); *FDIC v. Selaiden Builders, Inc.*, 973 F.2d 1249, 1253 (5th Cir. 1992); *FDIC v. Cardinal Oil Well Servicing Co.* ., 837 F.2d 1369, 1371 (5th Cir. 1988); *Resolution Trust Corp. v. Crow*, 763 F.Supp. 887, 891 (N.D. Tex. 1991).

sufficient evidence of how interest or late fees were calculated, or the basis for various miscellaneous fees." *Id.*[7]

Leal's declaration contains even less information than the affidavit involved in the *PNC Bank* case. First, there is no explanation as to how the amounts were calculated (and no supporting documentation). Second, there is no statement concerning the date(s) of default, which would impact the interest provisions and calculations. Third, there is no breakdown concerning the amounts allegedly owed, raising the question of whether his figures consist of principal, late fees, and/or miscellaneous fees, etc. and whether such fees are even recoverable under the agreements at issue. Leal's failure to explain his calculations precludes summary judgment. *See Investor Collection Services Ltd. Partnership v. Thomas*, 1998 WL 355469 at *8 (N.D. Tex. June 26, 1998) (denying summary judgment where creditor affidavit fails to explain damages calculation and provides no documents upon which he relied in making calculation).

(3)  Leal's declaration also contains no explanation of the pre-default interest rate charged by FMCC, and the underlying agreements relied on by FMCC do not establish the pre-default interest rate.[8] Rather, the agreements state that:

---

[7]  *See also Guerra v. M.H. Equities, Ltd.*, 2012 WL 2135596 (Tex.App.—Fort Worth 2012) (reversing summary judgment where it was unclear how creditor calculated amount owed).

[8]  FMCC's proof of claim in the bankruptcy court reflects an interest rate of 5.00% (variable) whereas Leal's declaration refers to different interest rates (either 6.5% or 6.75%) for different dealers. FMCC App. 189, 192, 195, 198, 201, 204, 10-11. These inconsistencies present a genuine issue of material fact. *See FFP Marketing Co., Inc. v. Long Lane Master Trust IV*, 169 S.W.3d 402, 411-12 (Tex.App.—Fort Worth 2005, no pet.) (holding "summary judgment evidence must establish the applicable rate of interest on a note as a matter of law, otherwise the movants have failed to meet their summary judgment burden to establish the amount due on the note.").

> Each Advance made by Ford Credit hereunder shall bear interest at the rates established by Ford Credit from time to time for Dealer . . . . In addition to interest, the financing of Merchandise under the Plan shall be subject to service and insurance flat charges established by Ford Credit from time to time.  Ford Credit shall advise Dealer in writing from time to time of any change in the interest rate and service and insurance flat charges applicable to Dealer and the effective date of such change.

(FMCC App. 14, 29, 39, 112, 125, 135).  There is no evidence in the record that FMCC gave notice of these interest rates to the debtor dealerships, how such interests rates were determined, or how or when such interest rates were changed and/or charged.  Moreover, it is unclear whether FMCC is including "service and insurance flat charges" as interest or claimed damages.  Absent such evidence, summary judgment is improper.

(4)     FMCC also seeks $1,220,000.00 in "expenses" as of December 31, 2018, and relies solely on Leal's declaration relating to same.  (FMCC App. 12).  Leal's declaration contains no explanation describing these alleged expenses and there is no supporting documentation in FMCC's appendix.  Simply put, there is nothing in the record as to what these "expenses" are or whether they are recoverable.  Absent such evidence, summary judgment must be denied.

(5)     Leal's declaration also contains no statement as to payments, credits, or offsets since August 1, 2018, which also precludes summary judgment.  Since that time, FMCC has received revenue from the debtor dealerships.  Reagor and Dykes attach hereto the affidavit of Lyndon James ("James"), a founding partner of BlackBriar Advisors, LLC, which is the bankruptcy court approved Chief Restructuring Officer ("CRO") to the Reagor-Dykes dealerships in bankruptcy.  (RD App. 103-04).  James has worked as part of the BlackBriar team that was also employed to provide CFO services,

which is the service component he has overseen. (*Id.*). James testifies that the amount of $10,359,368 has been paid and/or credited to FMCC by the Reagor-Dykes dealerships between August 1, 2018 and through January 31, 2019. (RD App. 104, ¶ 5). This amount is not accounted for in Leal's declaration. This alone presents a genuine issue of material fact, precluding summary judgment. *See Meecorp Capital Markets LLC v. Tex-Wave Industries LP*, 265 Fed.Appx. 155, 159-60 (5th Cir. 2008) (reversing summary judgment where trial court did not credit foreclosure sale proceeds to the underlying debt); *Investor Collection Services Ltd. Partnership v. Thomas*, 1998 WL 355469 at *8 (N.D. Tex. June 26, 1998) (denying summary judgment where creditor failed to proffer description of credits applied to debt or an explanation as to how those credits were obtained).

## 2.    The damages are disputed.

FMCC also takes the position that the Reagor-Dykes Auto Group have admitted that they collectively owe FMCC at least $109,091,460.95. This is not true. The bankruptcy schedules relied on by FMCC simply reflect amounts that FMCC claims are owed, which are hearsay and not an admission of liability.[9] Rule 801(c) of the Federal Rules of Evidence provides that "hearsay" is an out of court statement offered to prove the truth of the matter asserted. Rule 802 provides that hearsay is not admissible. Consistent with the hearsay rule, statements contained in bankruptcy schedules are

---

[9]    Federal Rule of Bankruptcy Procedure 1009 provides "A voluntary petition, list, schedule, or statement may be amended by the debtor as a matter of course at any time before the case is closed." Thus, the debtors can amend their schedules to show that the FMCC debt is disputed, which is consistent with the plan of reorganization filed in the bankruptcy case. (RD App. 4-63).

inadmissible. *See e.g. Leslie v. Leslie*, 181 B.R. 317, 322 (Bankr. N.D. Ohio 1995) (noting that "the actual truth of the [hearsay] assertions contained in a Debtor's bankruptcy schedules cannot be readily ascertained and such assertions are not the proper subject of judicial notice"); *Allred v. Irvine–Hedrick (In re Irvine–Hedrick )*, Adv. No. 12–5006, 2012 WL 5728625 at *2, n.7 (Bankr, D.S.D. Nov. 15, 2012) ("If offered for the truth of the matter asserted, Debtor's statements—whether in her bankruptcy schedules or elsewhere ... are hearsay and are not admissible").

As the schedules in this context are offered to prove an out of court declaration, they are inadmissible hearsay for which no exception exists.  FMCC seeks to rely on the schedules as an admission of the debt owed, but FMCC did not produce evidence that it has personal knowledge of that amount.  Thus, the Court should not consider them for the purpose of determining the amount of damages.  *See Presta v. Charles Schwab Bank, N.A. (In re Presta)*, 3:13-AP-128, 2014 WL 2448444 at *2 (Bankr. M.D. Fla. May 28, 2014) (finding bankruptcy schedules to be inadmissible evidence as to the payoff amount of bank's mortgage).

Additionally, the Reagor-Dykes Auto Group's  Chapter 11 Plan of Reorganization expressly states that "Ford Credit's secured claim is disputed" and that "Ford Credit's unsecured claim is also disputed."  (RD App. 10).

Moreover, since August 1, 2018, FMCC has received revenue from the debtor dealerships.  As shown above, from August 1, 2018 through January 31, 2019, the debtor dealerships have reduced the amount owed to FMCC by $10,359,368.  (RD App. 104).  Because these payments/credits are not accounted for in Leal's declaration, a genuine

issue of material facts on damages exists. *See Meecorp Capital Markets LLC v. Tex-Wave Industries LP*, 265 Fed.Appx. 155, 159-60 (5th Cir. 2008) (reversing summary judgment where trial court did not credit foreclosure sale proceeds to the underlying debt); *Investor Collection Services Ltd. Partnership v. Thomas*, 1998 WL 355469 at *8 (N.D. Tex. June 26, 1998) (denying summary judgment where creditor failed to proffer description of credits applied to debt or an explanation as to how those credits were obtained).

### 3.    FMCC's damages will be reduced soon.

FMCC has not informed the Court that its damages claim will be significantly reduced soon.  On January 25, 2019, FMCC sent a Notice of Private Sale to the Reagor-Dykes dealerships, Reagor, Dykes, and others that it intends to "sell the following described property privately sometime after February 11, 2019:

1.    Equipment, furniture, machinery, demonstrators and service vehicles, supplies and other goods of every kind.

2.    Motor vehicles, tractor trailers, implements, service part and accessories, and other inventory of every kind and any accessions thereto.

3.    Accounts, instruments, chattel paper, general intangibles, contract rights, documents and supporting obligation thereto.

4.    Fixtures located at Debtor's address and at any other address from which the Debtor conducts business."

(RD App. 3, 64-70).

The bankruptcy court recently noted that Paul Boudreau, an FMCC employee, testified that the vehicle inventory has a value of $60-$70 million and that the Reagor-Dykes dealerships' schedules state that the value is in the $90 million range.  Case 18-50214-rlj11, Doc. 865, p. 4.  Thus, regardless of the actual value, the impending sale of the collateral will reduce FMCC's damages by at least more than half (and perhaps up to 3/4's) of the amount it is seeking on summary judgment now.  Consequently, there is no justifiable reason for the Court to enter judgment on damages at this time.

**4.      The case law upon which FMCC relies is distinguishable.**

FMCC relies on four cases to support their damages claim, each of which is distinguishable and inapplicable here.  (Doc. 29, p. 23)  FMCC cites *Cont'l Illinois Nat. Bank & Tr. Co. of Chicago v. Windham*, 668 F.Supp. 578, 581 (E.D. Tex. 1987) and *Towncreek Industrial, LLC v. Wells Fargo Bank*, 2016 WL 6305257 (Tex. App. Fort Worth 2016, no pet.) for the proposition a creditor may establish the debt owed to it based on the debtor's admission as to the amount owed.  (Doc. 29, p. 23).  In *Windham*, the guarantor testified in his deposition that he did not dispute the debt owed to the creditor by the obligor.  *Windham*, 668 F.Supp. at 581.  There is no such evidence in this case.  As shown above, Reagor, Dykes and the debtor dealerships dispute FMCC's damages claims.  In *Towncreek*, the debtor judicially admitted an amount owed in its summary judgment response that was different than the amount claimed by the creditor.  2016 WL 6305257 at *3.  There is no such judicial admission here.

FMCC also relies on *Redus TX Properties, LLC v. Gray*, 2012 WL 1327787 (S.D. Tex. 2012) and *Stark Master Fund, Ltd. v. Ausmus*, 2010 WL 11618653 (N.D. Tex. 2010)

for the proposition that the creditor's own and sworn and documentary evidence may establish the debt owed to it.  (Doc. 29, p. 23).  Both cases are inapplicable here.

The affidavit at issue in *Redus* shows exactly why Leal's affidavit is deficient in this case.  *Redus* involved suing a guarantor to collect on a post-foreclosure deficiency judgment.  2012 WL 1327787 at *1.  The affiant, the plaintiff's vice-president, provided "detailed proof" as to the principal amount due on the date of the foreclosure, accrued interest at a certain percentage for a specific time period, default interest at a certain percentage for a specific time period, detailed miscellaneous fees and expenses, itemized credits to which the debtor was entitled which reduced the amount owed as of a certain date and then credited against that sum the proceeds received at the public auction of the property, resulting in the post-foreclosure debt owed by the guarantor.  *Id.* at *2.  The Court held that such "detailed proof" established the deficiency owed under the note and guaranty.  *Id.*  Leal's affidavit contains no such "detailed proof."

The *Ausmus* case also reveals why FMCC's damages proof is insufficient.  That case involved suing a guarantor to collect on a defaulted promissory note.  2010 WL 11618653 at *8.  To prove the debt for summary judgment, the creditor provided documentation, including accounting records and related documents, that evidenced the amount owed.  *Id.*  FMCC has provided no such documentation or accounting records to support its claim.

### E.    The Court should defer consideration at this time.

Reagor and Dykes once again respectfully request the Court to defer consideration of FMCC's Motion based on the ongoing bankruptcy proceeding involving the Reagor-

Dykes Dealerships.  The CRO of the debtor dealerships has been working diligently with bankruptcy counsel to prepare the Chapter 11 Plan of Reorganization for the Reagor-Dykes Auto Group (the "Plan"), which was filed with the bankruptcy court on or about January 7, 2019. (RD App. 2, ¶ 3).  Negotiations relating to the Plan between all parties in interest, including the debtor dealerships and FMCC, have continued since the filing of the Plan.  (*Id.*).  The debtor dealerships and FMCC (and other key players in the bankruptcy case) are also scheduled to mediate the bankruptcy case in Dallas, Texas, on February 25 and 26, 2019.  (*Id.*).  FMCC's claims in this lawsuit will surely be impacted should the Plan be confirmed and/or whether the case settles at mediation.  Moreover, as shown above, FMCC is in the process of foreclosing on its collateral, as it intends to conduct a private sale sometime after February 11, 2019, which will further impact this lawsuit and significantly reduce FMCC's claimed damages.  (RD App. 3, 64-70).  Due to the moving parts in the bankruptcy case and impending foreclosure sale, Reagor and Dykes respectfully request the Court to defer consideration of the Motion at this time.

**WHEREFORE, PREMISES CONSIDERED**, Defendants Bart Reagor and Rick Dykes respectfully pray that this Honorable Court deny Plaintiff's Motion for Summary Judgment, and for such other relief, at law and in equity, to which they may show themselves justly entitled.

Respectfully submitted,

 */s/ Marshall M. Searcy, Jr.*
Marshall M. Searcy, Jr.
State Bar No. 17955500
marshall.searcy@kellyhart.com
Scott R. Wiehle
State Bar No. 24043991
scott.wiehle@kellyhart.com
KELLY HART & HALLMAN, LLP
201 Main Street, Suite 2500
Fort Worth, Texas  76102
Telephone:  (817) 332-2500
Telecopy:  (817) 878-9280

**ATTORNEYS FOR BART REAGOR**


 */s/ Tom Kirkendall*
Tom Kirkendall
State Bar No. 11517300
Law Office of Tom Kirkendall
2 Violetta Court
The Woodlands, Texas 77381-4550
Telephone: (281) 364-9946
Telecopy:  (888) 582-0646
bigtkirk@kir.com

**ATTORNEY FOR RICK DYKES**

## <u>CERTIFICATE OF SERVICE</u>

I certify that a true and correct copy of the foregoing to be delivered to the following parties in accordance with the Federal Rules of Civil Procedure on February 22, 2019.

Keith A. Langley
Brandon K. Bains
Langley LLP
1301 Solana Blvd
Bldg 1, Ste 1545
Westlake, TX 76262
Email: klangley@l-llp.com
Email: bbains@l-llp.com

Craig A Leslie
Joanna Dickinson
Phillips Lytle LLP
One Canalside
125 Main Street
Buffalo, NY 14203
Email: cleslie@phillipslytle.com
Email: jdickinson@phillipslytle.com

Michael S. Goldberg
Baker Botts LLP
One Shell Plaza
910 Louisiana Street
Houston, Texas 77002
Email: michael.goldberg@bakerbotts.com

Jessica B. Pulliam
Baker Botts LLP
2001 Ross Avenue, Suite 900
Dallas, Texas 75201
Email: jessica.pulliam@bakerbotts.com

*/s/ Marshall M. Searcy, Jr.*
Marshall M. Searcy, Jr.