IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
LUBBOCK DIVISION

| | | |
|---|---|---|
| FORD MOTOR CREDIT COMPANY LLC, | § | |
|     Plaintiff, | § | |
| | § | |
| v. | § | |
| | § | Civil Action No.: 5:18-cv-00186 |
| BART REAGOR AND RICK DYKES, | § | |
|     Defendants. | § | |

**FORD MOTOR CREDIT COMPANY LLC'S REPLY BRIEF IN
<u>SUPPORT OF MOTION FOR SUMMARY JUDGMENT</u>**

Respectfully submitted,

**BAKER BOTTS LLP**
Michael S. Goldberg
State Bar No. 08075800
One Shell Plaza
910 Louisiana Street
Houston, Texas 77002
713-229-1234
713-229-1522 (Fax)
michael.goldberg@bakerbotts.com

**BAKER BOTTS LLP**
Jessica B. Pulliam
State Bar No. 24037309
2001 Ross Avenue, Suite 900
Dallas, Texas 75201
214-953-6500
214-953-6503 (Fax)
jessica.pulliam@bakerbotts.com

**LANGLEY LLP**
Keith A. Langley
State Bar No. 11919500
Brandon K. Bains
State Bar No. 24050126
1301 Solana Blvd.
Building 1, Suite 1545
Westlake, Texas 76262
214-722-7171
214-722-7161 (Fax)
klangley@l-llp.com
bbains@l-llp.com

**PHILLIPS LYTLE LLP**
Craig A. Leslie
One Canalside
125 Main Street
Buffalo, New York 14203
716-847-8400
716-852-6100 (Fax)
cleslie@phillipslytle.com

**ATTORNEYS FOR PLAINTIFF**

## TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ......................................................................................... ii

PRELIMINARY STATEMENT ..................................................................................... 1

ARGUMENTS AND AUTHORITIES............................................................................ 1

      A.      Ford Credit Established It Is Entitled To Summary Judgment. .............................. 2

      B.      Defendants' Submissions Do Not Defeat Ford Credit's Motion. ........................... 3

      C.      Defendants Cannot Re-Write the Terms of Their Guaranties. .............................. 5

      D.      Ford Credit Satisfied Its Summary Judgment Burden as to Damages.................... 8

      E.      The Court Should Reject Defendants' Attempts to Delay.................................. 10

CONCLUSION.......................................................................................................... 10

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Allied Van Lines, Inc. v. Aaron Transfer & Storage, Inc.*,
  No. 402-CV-497Y, 2003 WL 22056220 (N.D. Tex. Sept. 3, 2003) (Means, J.)......................6

*Austin Hardwoods, Inc. v. Vanden Berghe*,
  917 S.W.2d 320 (Tex. App.–El Paso 1995, no writ) ...........................................................5, 6

*Barnard Constr. Co., Inc. v. City of Lubbock, Tex.*,
  Civ. A. No. 5:03-CV-269 C, 2004 WL 2173403 (N.D. Tex. Sept. 24, 2004) .........................5

*BP Expl. & Prod. Inc. v. Cashman Equip. Corp.*,
  Civ. A. No. H-13-3046, 2016 WL 1387907 (S.D. Tex. Apr. 8, 2016) ....................................4

*Braden v. Allstate Vehicle and Prop. Ins. Co.*,
  4:18-CV-00592-O, 2019 WL 201942 (N.D. Tex. Jan. 15, 2019)
  (O'Connor, J.) .......................................................................................................................4

*Burton v. Banta Global Turnkey Ltd.*,
  170 F. App'x 918 (5th Cir. 2006) ..........................................................................................3

*Beal Bank, SSB v. Biggers*,
  227 S.W.3d 187, 192 (Tex. App.–Houston [1st Dist.] 2007, no pet.) .....................................5

*Cormier v. Pennzoil Expl. & Prod. Co.*,
  969 F.2d 1559 (5th Cir. 1992) ...............................................................................................3

*DirectTV, Inc. v. Budden*,
  420 F.3d 521 (5th Cir. 2005) .............................................................................................4, 5

*FDIC v. Coleman*,
  795 S.W.2d 706, 707-710 (Tex. 1990) ................................................................................10

*Gibson v. Liberty Mut. Grp.*,
  129 F. App'x. 94 (5th Cir. 2005) ...........................................................................................3

*GoldCrown Props., Inc. v. Mut. of Omaha Bank*,
  3:17-CV-527-C, 2018 WL 7247385 (N.D. Tex. Dec. 28, 2018)
  (Cummings, S.J.).................................................................................................................1, 8

*Hometown 2006-1 1925 Valley View, L.L.C. v. Prime Income Asset Mgmt.,L.L.C.*,
  595 F. App'x. 306 (5th Cir. 2014) ..........................................................................................7

*Jani-King Franchising, Inc. v. Jani-King (GB) Ltd.*,
  3:13-CV-4136 B, 2017 WL 4758673 (N.D. Tex. Oct. 17, 2017) (Boyle, J.) .......................1, 2

*NationsBank of Texas v. Oliver Transp. Inc.*,
  140 F.3d 1038 (5th Cir. 1998) ........................................................................6

*PNC Bank, NA v. BHMDF, Ltd.*,
  No. 3:15-cv-0765-M, 2016 WL 5942226 (N.D. Tex. Oct. 12, 2016) (Lynn,
  C.J.) ...........................................................................................................9, 10

*Redus TX Props., LLC v. Gray*,
  Civ. A. No. H-10-4602, 2012 WL 1327787 (S.D. Tex. Apr. 17, 2012) ...................9

*Smith v. Cnty. Nat'l Bank*,
  344 S.W.3d 561 (Tex. App.–Eastland 2011, pet denied) ......................................10

*Stark Master Fund*, 3:08-CV-1497-P, 2010 WL 11618653 (N.D. Tex. Mar. 31,
  2010) (Solis, J.) ...................................................................................................9

*Texas A&M Research v. Magna Transp., Inc.*,
  338 F.3d 394 (5th Cir. 2003) ...............................................................................4

*Thomas v. Atmos Energy Corp.*,
  223 F. App'x 369 (5th Cir. 2007) ..........................................................................3

*Vaughn v. DAP Fin. Serv., Inc.*,
  982 S.W.2d 1 (Tex. App.–Houston [1st Dist.] 1997, no pet.) ..................................5

*Wells Fargo Bank, N.A. v. Pitre*,
  3:17-CV-3177-N (BT), 2018 WL 4574998 (N.D. Tex. Sept. 6, 2018), adopted
  by 2018 WL 4566145 (Sept. 24, 2018) (Godbey, J.).........................................9, 10

**Other Authorities**

Fed. R. Civ. P. 56(c) .................................................................................................4

Fed. R. Civ. P. 56(d) ...........................................................................................2, 10

Fed. R. Evid. 803(6).................................................................................................4

## PRELIMINARY STATEMENT

Bart Reagor and Rick Dykes ("Defendants") admit signing absolute and unconditional guaranties to pay Ford Motor Credit Company LLC ("Ford Credit") the debts it is owed by the now-bankrupt Reagor-Dykes dealerships (the "Dealerships"). The Dealerships, meanwhile, admit to owing Ford Credit at least $109,091,460.95 after a massive fraud that occurred on Defendants' watch. Ford Credit's summary judgment evidence, Defendants' admissions that they signed such guaranties (waiving any defenses and "all set-offs and counterclaims"), and the Dealerships' admissions compel summary judgement in Ford Credit's favor.

Unable to demonstrate the existence of a genuine issue of material fact, Defendants responded to this motion with conjecture, speculation, and innuendo, which is not based on admissible or reliable evidence – and is patently incapable of raising a triable fact issue. The same holds true for Defendants' unpleaded "affirmative defense" and plea for delay.

This Court should grant Ford Credit's Motion in its entirety, and enter judgment against Defendants for $112,041,555.36, plus contractual interest from August 1, 2018 until the judgment is paid in full, as well as attorneys' fees.

## ARGUMENTS AND AUTHORITIES

The Court should grant this motion because Defendants' response relies exclusively on "[c]onclusory statements, speculation, and unsubstantiated assertions," which "are not specific facts and are not sufficient to defeat a motion for summary judgment." *See GoldCrown Props., Inc. v. Mut. of Omaha Bank*, 3:17-CV-527-C, 2018 WL 7247385, at *2 (N.D. Tex. Dec. 28, 2018) (Cummings, S.J.).[1]

---

[1]     To defeat Ford Credit's motion, Defendants needed to raise a fact issue on the: (1) existence and ownership of the guaranties; (2) guaranties' terms; (3) occurrence of the conditions upon which Defendants' liability is based; or (4) Defendants' failure to perform. *See Jani-King Franchising, Inc. v. Jani-King (GB) Ltd.*, 3:13-CV-4136 B, 2017 WL 4758673, at *3 (N.D. Tex. Oct. 17, 2017) (Boyle, J.).

### A.      Ford Credit Established It Is Entitled To Summary Judgment.

Defendants have not and cannot refute Ford Credit's summary judgment evidence.  That evidence includes Defendants' crystal clear admissions that the Dealerships defaulted by, among other acts, reporting false financial information to Ford Credit, not repaying amounts owed, and filing for bankruptcy.  *See* Dkt. 21 at ¶¶ 3, 14, 21, 185, 188 (Dykes's Answer); Dkt. 23 at ¶ 3 (Reagor's Answer); Dkt. 33 at ¶ 14 (Defendants' Rule 56(d) Brief).[2]  Each act constituted a default under the Dealerships' Wholesale Agreements.  *See* Dkt. 30 (referenced herein as "APP"), Ex. B at ¶ 9 (default events include failure to "promptly pay any amount now or hereafter owing to Ford Credit," "any representation made by Dealer to Ford Credit shall prove to have been false or misleading in any material respect," or "a proceeding in bankruptcy, insolvency or receivership shall be instituted by or against Dealer").  Defendants also admitted the underlying Wholesale Agreements were executed by the Dealerships and do not dispute that these are events of default.  *See* Dkt. 21 at ¶¶ 25, 48, 66, 110, 129, 146; Dkt. 23 at ¶¶ 25, 48, 66, 110, 129, 146.

Ford Credit, however, also submitted the sworn Rule 2004 examination of Dealership accountant Tim Conner, who unequivocally testified that the Dealerships double-floored at least 185 vehicles.  APP 434 ("the last count, to my recollection, was 185").  Ford Credit also submitted the Dealerships' bankruptcy schedules, which establish that, as of October 19, 2018,

---

The Court need not reach the first or fourth elements because Defendants do not challenge either.  *Compare* Dkt. 40, *with* Dkt. 29 at 17-20, 22-25 (establishing existence and ownership of guaranties), *and id.* at 26 (establishing Defendants have not paid).  While Defendants dispute the second element, in part, they also concede it, in part.  Dkt. 40 at 21 ("Reagor and Dykes should be discharged of the guarantees, *at least with respect to* the out of the [sic] trust sales") (emphasis added).  Defendants do not dispute that, at a minimum, the bankruptcy filings triggered the Dealerships' defaults and, thus, Defendants' guaranty obligations.  Thus, the Court need not analyze the third element, either.  *See* Dkt. 29 at 11, 13, 18, 21, 26.

[2]      Although Reagor initially denied that the Dealerships "provided Ford Credit with false and/or incorrect information" (Dkt. 23 at ¶ 178), he now admits that the Dealerships' CFO provided false financial information to Ford Credit.  Dkt. 33 at ¶ 14.  Dykes admits this, too.  *Id.*; *see* Dkt. 21 at ¶ 14.

they owe Ford Credit at least $109,091,460.95.  APP 206-404.  This additional evidence – which Defendants ignore – confirms the Dealerships' defaults.

Accordingly, Ford Credit established the defaults that give rise to Defendants' liability, and Defendants have not (and cannot) raise a triable issue of fact as to such defaults.

**B.      Defendants' Submissions Do Not Defeat Ford Credit's Motion.**

Because Defendants cannot refute this evidence, they try to challenge Ford Credit's submissions by: (1) selectively quoting Leal's Rule 2004 examination, to imply he lacked involvement with the Dealerships; and (2) ignoring the four-month gap between his examination and declaration.  Dkt. 40 at 11.  Defendants' attacks on Leal's declaration are both misplaced and contradicted by the record.

The record demonstrates that Leal is competent to testify as to the matters set forth in his declaration.  *See* Dkt. 41, RD APP 077 at 26 ("I basically on a daily basis have been on the phone with the folks that we have at each of the stores attempting to continue to secure our collateral"); APP 2 at ¶ 3 (Leal's declaration is based on "review of certain records of Ford Credit," "dealings with the . . . Dealerships," and "involvement with the effort to address the status situation resulting from the defaults").[3]  Defendants' requests to exclude parts of Leal's declaration, which support the third element of Ford Credit's claim: occurrence of the conditions upon which Defendants' liability is based, lack merit.  Dkt. 40 at 10-13 (arguing ¶¶ 31-46 lack

---

[3]      The cases cited by Defendants in support of their arguments concerning the Leal declaration are also inapposite.  *See* Dkt. 40 at 11 (citing *Thomas v. Atmos Energy Corp.*, 223 F. App'x 369 (5th Cir. 2007); *Cormier v. Pennzoil Expl. & Prod. Co.*, 969 F.2d 1559 (5th Cir. 1992); *Burton v. Banta Global Turnkey Ltd.*, 170 F. App'x 918 (5th Cir. 2006); *Gibson v. Liberty Mut. Grp.*, 129 F. App'x 94 (5th Cir. 2005)).  *Thomas* and *Cormier* analyze affidavits attesting to hearsay – but Leal recites no facts based on hearsay.  While *Burton* barred testimony of procedures the witness did not know about, the court recognized the witness's competency to testify on business procedures she observed.  *Gibson* involved an individual's entirely self-serving assertions about legal conclusions and hearsay without foundation or bases in documentary evidence.  Here, Leal based his testimony on: (1) documentary evidence; (2) processes and procedures that knows about because of his job; and (3) his involvement in Ford Credit's investigation and efforts to secure its collateral.

personal knowledge); *id*. at 14 (arguing ¶¶ 42-43, and 46 contain legal conclusions).   Indeed, Leal is competent to testify as to, and based on, Ford Credit's documentary evidence, because that evidence consists of records kept in its regular course of business.  *See* APP 2 at ¶ 4; Fed. R. Evid. 803(6); Fed. R. Civ. P. 56(c); *Braden v. Allstate Vehicle and Prop. Ins. Co.*, 4:18-CV-00592-O, 2019 WL 201942, at *3-4 (N.D. Tex. Jan. 15, 2019) (O'Connor, J.) (affidavit demonstrated exhibits' admissibility as business records); *BP Expl. & Prod. Inc. v. Cashman Equip. Corp.*, Civ. A. No. H-13-3046, 2016 WL 1387907, at *10 (S.D. Tex. Apr. 8, 2016) (party-employees can testify based on records kept in ordinary course of business); *Texas A&M Research v. Magna Transp., Inc.*, 338 F.3d 394, 402 (5th Cir. 2003) (affidavit admissible when district court "could [have] reasonably concluded that, as vice-president . . . [affiant] had personal knowledge" as to "some of the statements in the affidavit" even without knowledge of all facts).   Here, Leal also specifically averred that he learned of the applicable facts: (1) by reviewing records Ford Credit kept in its ordinary course of business; and (2) because of his job duties as Financial Services Manager.  *See* APP 2 at ¶¶ 2-3; *DirectTV, Inc. v. Budden*, 420 F.3d 521, 529–30, n.40 (5th Cir. 2005) (affiant could testify about facts "that he had personal knowledge of . . . and that he had access to[,] and [that he] had reviewed [his] company's records as they pertain[ed] to information contained in the affidavits").

And, contrary to Defendants' mischaracterization of the record (Dkt. 40 at 8), Ford Credit does not rely "solely" on Leal's declaration to show the occurrence of the conditions upon which liability is based.   Instead, as demonstrated above and in its motion, Ford Credit relies on unchallenged documentary evidence establishing Defendants' obligations, the Dealerships' (and Defendants') failure to pay amounts owed, Defendants' admissions concerning the same, as well as testimony and admissions by the Dealerships and their employees that conclusively establish

multiple defaults.  *See* Section A, *supra*.  Defendants also cannot dispute that: (1) filing for bankruptcy automatically triggers defaults; (2) the Dealerships filed for bankruptcy (and thus defaulted); and (3) the Defendants guaranteed the Dealerships' obligations upon default.

### C.      Defendants Cannot Re-Write the Terms of Their Guaranties.

Defendants also try – but fail – to create a material fact issue by asking this Court to read terms into unambiguous contracts, under the guise of their unpleaded "material alteration" affirmative defense.[4]  Dkt. 40 at 15 (citing *Austin Hardwoods, Inc. v. Vanden Berghe*, 917 S.W.2d 320, 326 (Tex. App.–El Paso 1995, no writ) ("material alteration is an affirmative defense")).  The crux of Defendants' unpleaded defense is that Ford Credit can only enforce guaranties as to the Dealerships' "secured" obligations.  *Id.*  But the record defies this argument – the guaranties contain no such limitation.  *See* APP 21-22, 25-26, 35-36, 45-46, 100-04, 106-10, 118-19, 131-32, 141-42, 145-46; Dkt. 36 at 18.

Instead, Defendants' continuing guaranties contemplated a future course of dealing between Ford Credit (as lender) and Defendants (as debtors), and were intended to cover accruing liabilities.  *Cf. Beal Bank, SSB v. Biggers*, 227 S.W.3d 187, 192 (Tex. App.–Houston [1st Dist.] 2007, no pet.) (guarantors not liable on loan increases when guaranty limited liability to original amount and they did not agree to increase liabilities); *with Vaughn v. DAP Fin. Serv., Inc.*, 982 S.W.2d 1, 5 (Tex. App.–Houston [1st Dist.] 1997, no pet.) ("a continuing guaranty . . . contemplates a future course of dealing between the lender and the debtor, and is intended to apply to other liabilities as they accrue").  Defendants' guaranties unambiguously and unconditionally: (a) guaranteed the Dealerships' "present ***and future*** obligations to [Ford Credit]

---

[4]      Because Defendants failed to plead this affirmative defense, the Court need not, and should not, consider it.  *See Barnard Constr. Co., Inc. v. City of Lubbock, Tex.*, Civ. A. No. 5:03-CV-269 C, 2004 WL 2173403, at *13 (N.D. Tex. Sept. 24, 2004) (Cummings, S.J.) (failure to raise affirmative defense in answer amounted to waiver, and precluded defendant from raising it for first time on summary judgment).

arising out of or in connection with [Ford Credit's] financing for the [Dealerships]" and (b) required Defendants to satisfy "***all***" of the Dealerships' obligations.  APP Exs. B, E, G, R, T, V (emphasis added).

Because, under the plain and clear text of the agreements and guaranties, no distinction exists between "secured," "unsecured," or other obligation owed to Ford Credit, Defendants cannot demonstrate a material fact issue on the affirmative defense that the underlying wholesale financing agreements have been altered.  *See Austin*, 917 S.W.2d at 326 ("the elements of the [affirmative] defense are threefold: (1) a material alteration of the underlying contract; (2) made without his consent; and (3) which is to his detriment (i.e., is prejudicial to his interest)").  Incurring more debt does not amount to a material alteration.  *See id.* (no material alteration when plaintiff exceeded original credit terms on an open account under which amount of credit would be determined in the future).  Because Defendants were: (1) "obligated to pay all of [the Dealerships'] debts" before the alleged modification; and (2) remain "obligated exactly to that same extent" after the alleged modification, they cannot claim prejudice or injury.  *See Allied Van Lines, Inc. v. Aaron Transfer & Storage, Inc.*, No. 402-CV-497Y, 2003 WL 22056220, at *7 (N.D. Tex. Sept. 3, 2003) (Means, J.).

Defendants' "material alteration" defense also fails because they explicitly waived modification-based defenses.  *See* APP Exs. C-D, F, H, P-Q, S, U, W-X (entitling Ford Credit to "renew, extend, ***modify*** or transfer any obligations of [the Dealerships] . . . without affecting or impairing the obligation of [Defendants]") (emphasis added).  Those waivers preclude Defendants from limiting their guaranties based upon their unpleaded "material alteration" defense.  *See NationsBank of Texas v. Oliver Transp. Inc.*, 140 F.3d 1038, 1038 (5th Cir. 1998) (guarantor could not raise material alteration defense for conduct he explicitly waived).

Moreover, the plain language of Defendants' waivers extended to *all* defenses – modification-based or otherwise. Specifically, Defendants waived all defenses, setoffs, and counterclaims. *See* Dkt. 36 at 14-17. For example, Defendants' Capital Loan guaranties waived "all other rights and defenses the assertion or exercise of which would in any way diminish" their liability to Ford Credit. Dkt. 11, Ex. X at ¶ 2(c). Those guaranties (and accompanying waivers) were later tied together with *all* of Defendants' other guaranties.[5] *See id.*, Ex. W at ¶ 5; *see* Dkt. 36 at 14-16. Defendants' comprehensive, interlocking waivers of affirmative defenses are clear, unambiguous, valid, and enforceable. *See, e.g., Hometown 2006-1 1925 Valley View, L.L.C. v. Prime Income Asset Mgmt., L.L.C.*, 595 F. App'x. 306, 310 (5th Cir. 2014) (applying Texas law) (enforcing clear and specific waivers against guarantors – even all-encompassing ones).

Defendants attempt to bolster their unpleaded "material alteration" defense by once again making reckless and baseless statements to the Court regarding Ford Credit's employee, Gary Byrd. Defendants seek to somehow tie Mr. Byrd to the admitted fraud committed by the Dealerships' CFO, Shane Smith – and this time (again without any proof) suggest that Ford Credit cannot recover against them because Mr. Byrd allegedly did not communicate with them, individually and directly, concerning certain audit results. Defendants stoop to this argument

---

[5]   Defendants admit to executing that agreement. Dkt. 21 at 30; Dkt. 23 at 31. It provides: "[a]s a condition of the financing evidenced on Schedule A, Lender has required that each of the Loans be cross-defaulted and cross-collateralized with each other Loan[.]" *Id.* It defines "Loans" as "each of the Loans as listed in Schedule A." *Id.* Schedule A lists seven specific loans but contains an extremely broad catch-all provision extending to "*any and all* other loans now or hereafter outstanding made by Lender *to any Obligor*, and *any and all* extensions, increases, amendments, renewals, and modifications of the foregoing." *Id.* (emphasis added). It also defines "Obligations" as "*[a]ny and all* of the covenants, promises and other obligations . . . made or owing by the Obligors and others to or due to Lender under the . . . documents evidencing the Loans." *Id.* (emphasis added) (excepting "Indebtedness," which is defined as "[t]he principal of and interest on all payments . . . due under the Loans and all of indebtedness of each Obligor to Lender under . . . the Security Documents"). In that agreement, Defendants waived all "defense[s], claim[s], charge[s], plea[s] or set-off[s] . . . against the Lender, the Guaranty, [that Agreement] or *any other* instrument or document executed by Each Obligor in connection with the Guaranty or this Agreement." *Id.* (emphasis added). The Agreement's broad, interrelated definitions confirm the parties intended to tie all agreements together and that Defendants waived all defenses.

despite admitting that: (a) Ford Credit communicated with Defendants' CFO, whom Defendants personally selected to run their Dealerships (and to whom they turned over full financial control) (*see* Dkt. 41 at A0107); and (b) Defendants personally promised Ford Credit that Defendants assumed "full responsibility for keeping fully informed with respect to the business, operation, condition and assets" of the Dealerships.  *See* APP 101, ¶ 2(d).  This is further evidence that Defendants will stop at nothing, including directing false representations and innuendo toward a Ford Credit employee, to try to buy more time or improperly muddle the record.  This Court should not reward such conduct.[6]

In sum, Defendants' unpleaded and unsupported "material alteration" defense lacks merit, has been waived, and does not raise a fact issue on liability.

### D.    Ford Credit Satisfied Its Summary Judgment Burden as to Damages.

Contrary to Defendants' remaining arguments, Ford Credit's summary judgment evidence meets its burden of establishing the damages that Defendants owe.  Thus, no basis exists for delaying summary judgment on those damages.

In support of its motion, Ford Credit submitted: (1) the Dealerships' admissions that they owed at least $109,091,460.95, as of October 19, 2018; and (2) Leal's sworn declaration stating the amounts each dealership owed as of August 1, 2018, together with the pre- and post-default interest rates, and the expenses (exclusive of attorneys' fees) that Ford Credit has so far incurred. APP 206-404 (Dealerships' admissions); *id.* at 10-12 (Leal's declaration).

---

[6]     To the extent Defendants also try to support their unpleaded "material alteration" defense with an affidavit submitted by Dykes, that affidavit is both speculative and inherently unreliable and self-serving. Dykes claims that he had "no day-to-day management role" in the Dealerships (Dkt. 41 at A0106), yet speculates that Mr. Byrd "knew or should have known" of the fraud being committed by the Dealerships (*see id.* at A0109).  Dykes tries to substantiate this rank speculation by supposedly "quoting" a conversation with Mr. Byrd (after Ford Credit discovered the fraud) – that ***Dykes has never before mentioned in any other submission or forum*** - which speaks volumes about its reliability and veracity. And, regardless, Dykes's speculation about what Ford Credit "knew or should have known" does not, and cannot, raise a triable fact issue.  *See GoldCrown*, 2018 WL 7247385 at *2.

Defendants cannot escape the Dealerships' admissions.  The Dealerships executed their bankruptcy schedules under penalty of perjury and those schedules "are eligible for treatment as judicial admissions."  *Wells Fargo Bank, N.A. v. Pitre*, Civ. A. No. 3:17-CV-3177-N (BT), 2018 WL 4574998, at *3 (N.D. Tex. Sept. 6, 2018), adopted by 2018 WL 4566145, at *1 (Sept. 24, 2018) (Godbey, J.).  Defendants cannot dispute that they are equally liable for the Dealerships' wholesale financing obligations to Ford Credit.  Dkt. 36 at 15 (citing Defendants' agreements to joint, several, and unconditional guaranties).   The Dealerships' admissions constitute uncontroverted evidence of the damages that Ford Credit is entitled to recover from Defendants. Defendants ask this Court to disregard those admissions – because the Dealerships *may in the future* dispute amounts owed to Ford Credit – yet Defendants offer no evidence that the Dealerships have: (1) amended their sworn bankruptcy schedules; or (2) objected to Ford Credit's proofs-of-claim.  *See* Case No. 18-50214-rlj11 (Bankr. N.D. Tex. Aug. 1, 2018) (Jones, J.).

Finally, contrary to Defendants' argument, Ford Credit established the damages it is entitled to recover, and Defendants have not refuted that proof.  The guaranties unambiguously require Defendants to repay all of the Dealerships' obligations to Ford Credit, including interest, costs, expenses and attorneys' fees.  *See* APP Exs. C-D, F, H, P-Q, S, U, W-X.  This motion readily identifies such obligations (except attorneys' fees).  Nothing more is required.  *See Stark Master Fund*, Civ. A. No. 3:08-CV-1497-P, 2010 WL 11618653, at *8 (N.D. Tex. Mar. 31, 2010) (Solis, J.) (awarding amount owed based on accounting records and documents evidencing amount due under guaranty); *Redus TX Props., LLC v. Gray*, Civ. A. No. H-10-4602, 2012 WL 1327787, at *2 (S.D. Tex. Apr. 17, 2012) (awarding amount owed based on declaration from company vice-president detailing principal and interest owed, and fees and expenses).[7]

---

[7]     Defendants' reliance on *PNC Bank* is misplaced.  *See PNC Bank, NA v. BHMDF, Ltd.*, No. 3:15-cv-0765-M, 2016 WL 5942226, at *4 (N.D. Tex. Oct. 12, 2016) (Lynn, C.J.).  *PNC* rejected the bank's

### E.    The Court Should Reject Defendants' Attempts to Delay.

Even though this Court determined that Defendants "failed to show good cause" to delay ruling on this motion, Defendants again seek delay – based upon nearly the same arguments this Court already rejected.  Dkt. 39 at 1 (denying Defendants' Rule 56(d) Motion); Dkt. 40 at 29 (Motion); Dkt. 36 at 6, 18-19 (Response).  Defendants' latest request for delay fails for the same reasons.  *See* Dkt. 36 at 6, 19.

Ford Credit's ability to recover is rapidly fading as Defendants face no restrictions on asset liquidation.  Dkt. 36 at 18-19.[8]  The guaranties' plain text does not require Ford Credit to stand idly by, or to "collect or otherwise liquidate any obligation or security" (APP 21), before it can obtain judgment against Defendants.  *See also* APP at 25, 35, 45, 100, 106-110, 118, 131, 141, 145.  Not even the impending liquidation of Ford Credit's collateral presents a basis to delay judgment in its favor.  *See Smith v. Cnty. Nat'l Bank*, 344 S.W.3d 561, 564 (Tex. App.–Eastland 2011, pet. denied) (if "guaranty agreement so provides, a lender need not liquidate its collateral before obtaining judgment against a guarantor."); *FDIC v. Coleman*, 795 S.W.2d 706, 707-710 (Tex. 1990).[9]

### CONCLUSION

For the reasons set out above, and in its initial brief, Ford Credit requests that the Court enter summary judgment in its favor as to both liability and damages, and set a schedule for Ford Credit to submit proof regarding its attorneys' fees.

---

explanation for interest and late fees.  *See id.*  Here, Ford Credit set forth the applicable interest rates together with its incurred expenses.  Defendants offer no evidence refuting either item of damages.

[8]    Indeed, Mr. Dykes sold a property worth an estimated $1.7 million dollars while this motion has been pending.  *See* Deed, filed in Lubbock County, February 14, 2019, Instrument No. 2019005254.

[9]    Proceeds from collateral liquidation in the Dealerships' bankruptcy proceedings, and any other payments against the total outstanding debt, will result in a credit against the judgment entered in this action.  *See* Dkt. 36 at 15.  A judgment for Ford Credit can require it to credit such proceeds accordingly.

Respectfully submitted,                         *And*

**BAKER BOTTS LLP**                             **BAKER BOTTS LLP**
                                                 Jessica B. Pulliam
By: */s/ Michael S. Goldberg*                    State Bar No. 24037309
    Michael S. Goldberg       2001 Ross Avenue, Suite 900
    State Bar No. 08075800     Dallas, Texas 75201
    One Shell Plaza            214-953-6500
    910 Louisiana Street       214-953-6503 (Fax)
    Houston, Texas 77002       jessica.pulliam@bakerbotts.com
    713-229-1234
    713-229-1522 (Fax)        **COUNSEL FOR PLAINTIFF**
    michael.goldberg@bakerbotts.com

**COUNSEL FOR PLAINTIFF**
*And*                                            *And*

    **LANGLEY LLP**             **PHILLIPS LYTLE LLP**
    Keith A. Langley, Esq.      Craig A. Leslie, Esq.
    State Bar No. 11919500      One Canalside
    Brandon K. Bains, Esq.      125 Main Street
    State Bar No. 24050126      Buffalo, New York  14203
    1301 Solana Blvd.           716-847-8400
    Building 1, Suite 1545      716-852-6100 (Fax)
    Westlake, Texas  76262      cleslie@phillipslytle.com
    214-722-7171               **COUNSEL FOR PLAINTIFF** *Pro Hac Vice*
    214-722-7161 (Fax)
    klangley@l-llp.com
    bbains@l-llp.com
**COUNSEL FOR PLAINTIFF**

**CERTIFICATE OF SERVICE**

I hereby certify that on March 8, 2019, a copy of the foregoing Reply Brief in Support of Motion for Summary Judgment was filed electronically.  Notice of this filing will be sent by operation of the Court's electronic filing system to all parties indicated on the electronic filing receipt.  All other parties will be served by regular U.S. mail. Parties may access this filing through the Court's electronic filing system.

*/s/ Michael S. Goldberg*
Michael S. Goldberg